IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STEPHEN D. METZ     )
            )
 Plaintiff,      )
            )
  v.        )  Civil Action No. 1:12cv1694
            )
BAE SYSTEMS TECHNOLOGY SOLUTIONS )
 & SERVICES, INC.    )
            )
            )
 Defendant.     )
            )

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS THE AMENDED COMPLAINT**

January 25, 2013      Peter C. Cohen
            D.C. Bar No. 413247
            pcohen@cbcblaw.com
            CHARLSON BREDEHOFT COHEN
             BROWN & SAKATA, P.C.
            11260 Roger Bacon Drive, Suite 201
            Reston, VA 20190
            (703) 318-6800 Telephone
            (703) 318-6808 Facsimile

            *Counsel for Plaintiff,*
            *Stephen D. Metz*

## TABLE OF CONTENTS

SUMMARY.................................................................................................................1

I.    THE MOTION TO DISMISS COUNTS 2 AND 3 SHOULD BE DENIED.........................2

        A.  The Question Presented Is Whether The District Of Columbia Permits A Cause
            of Action For Third-Party Interference With Existing Or Prospective At-Will
            Employment...................................................................................................2

        B.  This Court Has Confirmed That The Common Law Of The District Does Not
            Address The Specific Question Of Third-Party Interference With At-Will
            Employment And That It Is An Open Question In This Jurisdiction.....................8

            1.  The D.C. Court of Appeals has not decided the question of third-party
                interference with at-will employment, and in McManus showed some
                receptivity towards recognizing the claim...................................................8

            2.  Acknowledging that third-party interference with at-will employment
                remains an open question in the District, this Court, like the D.C. Court
                of Appeals, has shown receptivity to recognizing such a claim...............10

        C.  The Court Must Predict How The D.C. Court of Appeals Would Decide The
            Open Question Of An At-Will Plaintiff Proceeding With A Third-Party
            Tortious Interference Claim – And Guidance Exists For The Task.....................13

        D.  The D.C. Court of Appeals Would Permit An At-Will Employee To Pursue A
            Third-Party Interference Claim Where Wrongful Or Improper Means Are
            Alleged......................................................................................................14

            1.  Where a gap exists in D.C. law, the common law of Maryland is
                followed, and the common law of Maryland permits an at-will cause
                of action for third-party interference.........................................................14

            2.  Like MD courts, DC Courts have adopted the same provisions of the
                Restatement (Second) of Torts which have recognized a cause of action
                for third-party interference with at-will employment since 1939.............19

            3.  The Supreme Court has recognized third-party interference with at-will
                employment since 1915...........................................................................20

            4.  The vast majority of jurisdictions throughout the nation recognize a cause
                of action for third-party interference with at-will employment.................22

5.  This Court in <u>Bowhead</u> has already recognized a cause of action for third-party interference with at-will employment when the improper mean of threatening civil litigation is alleged.........................................................23

6.  Based on compelling authority, the D.C. Court of Appeals would permit Plaintiff's third-party interference claims to proceed in this case..............................................................................................................24

II.    THE MOTION TO DISMISS COUNT 4 SHOULD BE DENIED.......................................25

CONCLUSION.................................................................................................................27

## SUMMARY

The motion to dismiss COUNTS 2 and 3 of the Amended Complaint (third-party interference with at-will employment and expectancy) should be denied. This Court has confirmed that the common law of the District of Columbia does not address the specific question of third-party interference with at-will employment (both existing and expectancy) and that it is an open question in this jurisdiction. Accordingly, the Court must predict how the D.C. Court of Appeals would decide the question of an at-will plaintiff proceeding with a third-party tortious interference claim, and guidance exists for the task.

The D.C. Court of Appeals would permit an at-will employee to pursue a third-party interference claim where wrongful or improper means are alleged based on the fact that: (1) both the D.C. Court of Appeals and this Court have showed receptivity towards recognizing such a cause of action under D.C. common law; (2) where a gap exists in D.C. law, the common law of Maryland is followed, and the common law of Maryland has long permitted an action for third-party interference with at-will employment (3) like MD courts, D.C. courts have adopted the same provisions of the Restatement (Second) of Torts which have recognized a cause of action for third-party interference with at-will employment since 1939; (4) the Supreme Court has recognized third-party interference with at-will employment since 1915; (5) the vast majority of jurisdictions throughout the nation recognize a cause of action for third-party interference with at-will employment; and (6) this Court has already recognized a cause of action for third-party interference with at-will employment when the improper mean of threatening civil litigation is alleged. Based on compelling authority and the nature of the allegations pled, the D.C. Court of Appeals would permit Plaintiff's third-party interference claims to proceed in this case.

The motion to dismiss COUNT 4 of the Amended Complaint (breach of the implied covenant of good faith and fair dealing) should be denied because the allegations can support a finding that BAE's conduct in this case (1) evaded the spirit of the parties' agreement and was in bad faith; (2) denied Plaintiff the fruits of the agreement; and (3) the cases BAE cited do not support dismissal.[1]

## I.   THE MOTION TO DISMISS COUNTS 2 AND 3 SHOULD BE DENIED

### A.   The Question Presented Is Whether The District Of Columbia Permits A Cause Of Action For Third-Party Interference With Existing Or Prospective At-Will Employment

The facts alleged in the Amended Complaint are to be taken as true for purposes of the motion to dismiss.  Strumsky v. Wash. Post Co., 842 F.Supp.2d 215, 216 (D.D.C. 2012).

BAE provides management and operational support to the U.S. Armed Forces, Department of Defense, and other Federal agencies.  Amd. Compl. ¶ 7.  BAE capabilities cover air, land, and sea operations and include ordnance management (from requirements to disposal); systems engineering, design, and test/evaluation services; software development; program management support; technical services; and integrated logistical support.  Id.  Plaintiff is a licensed Professional Mechanical Engineer with over 32 years experience in Naval and Marine Corps Systems.  Id. ¶ 10.  He has been on both the Acquisition and Program management side as well as the technical side to include manufacturing management, test and evaluation, and research and development.  Id.

BAE employed Plaintiff from August 13, 2007 to February 2, 2012 as Vice President Maritime Programs.  Id. ¶ 8.  While BAE's main location is in Rockville, Maryland, it assigned Plaintiff to work at its M Street location in the District of Columbia.  Id.  At BAE, Plaintiff led a

---

[1] As a practical matter, the non-compete at issue expires shortly in February.  COUNTS 1 and 5, and the motion to dismiss these counts, will therefore be moot.  Accordingly, COUNTS 1 and 5 are withdrawn.

$245 million-plus defense engineering and technical services division of over 700 personnel

which supported long-term acquisition programs in the Naval Sea Systems Command in both the

ship and weapons systems Program Executive Offices as well as in the U.S. Marine Corps

Systems Command and the Naval Surface Warfare Center Dahlgren. Id. ¶ 9.

During the years of Plaintiff's employment with BAE, BAE and Alion Science and

Technology Corporation (ALION) did not compete for business with one another. Id. ¶ 51. On

the contrary, the two companies worked together as teammates and partners on several business

opportunities and contracts where one company was the prime contractor and the other company

was the subcontractor. Id. ALION and BAE have a history of successfully teaming with one

another on projects of mutual benefit. Id. When BAE laid Plaintiff off (his last day at BAE was

February 3, 2012), Plaintiff had a discussion with Kris Busch, Vice President and General

Manager for Maritime and Defense Solutions at BAE, in which Mr. Busch wished Plaintiff well

and stated that he knew Plaintiff would not be unemployed for long because of his reputation in

the industry and that he hoped that BAE and Plaintiff could continue to work together on future

opportunities. Id. ¶ 52.

After his employment with BAE ended, Plaintiff applied for the position of Senior Vice

President and Group Manager of the Acquisition Program Management Group at ALION. Id.

¶ 53. The person selected for the position would manage long-range multiple contracts that

totaled approximately $210 million of the company's approximately $787 million in annual

revenues, or 27% of revenues. Id. The position was a critical leadership position that had been

open for approximately fourteen months because ALION was searching for a uniquely well-

qualified and well-suited professional to fill the position. Id. Concluding that Plaintiff was a

perfect fit for the Senior Vice President and Group Manager position, ALION selected Plaintiff to

3

fill the position. Id. ¶ 54.  He went to work for ALION on May 14, 2012 at ALION's office in the District of Columbia. Id.

As Senior Vice President and Group Manager of the Acquisition Program Management Group, Plaintiff was an officer of the company whose position required approval by ALION's Board of Directors. Id. ¶ 55.  Although the employment was on an at will basis, ALION provided Plaintiff with a $25,000 sign-on bonus in exchange for his commitment to stay with the company at least through May 14, 2013. Id.  ALION provided such bonuses to, and sought such commitments from, a select group of high-level managers with unique qualifications with whom it sought long-term employment relationships. Id.

BAE became aware of the fact that Plaintiff went to work for ALION. Id. ¶ 57. *Plaintiff himself* informed Mr. Busch and another manager at BAE of the fact that he was hired by ALION. Id.  Plaintiff pointed out the history of teaming between the two companies and that he wished for such teaming efforts to continue. Id.  Plaintiff suggested a discussion with the two BAE managers on how the two companies could team and partner on future opportunities. Id.

When Plaintiff went to work for ALION, ALION and BAE (consistent with their history) were not competitors, were not in competition with each other for any business opportunities or contracts, and would not be in competition with each other throughout the duration of Plaintiff's one-year non-compete agreement with BAE. Id. ¶ 58.  On the contrary, ALION and BAE were teammates and partners on several projects. Id.  Moreover, ALION's employment of Plaintiff did not result in any actual or direct competition between ALION and BAE, or between BAE and Plaintiff. Id. ¶ 59.  Again, ALION and BAE were teammates on several projects. Id.  There was no competition between them, and ALION's employment of Plaintiff did not change this fact, and BAE knew this. Id.

4

Actually, given the long history of teaming between ALION and BAE, ALION's employment of Plaintiff benefitted BAE as it would help solidify this teaming relationship for future opportunities of mutual benefit to both companies. Id. ¶ 60. ALION's employment of Plaintiff neither required Plaintiff to breach, nor resulted in any breach, of either the letter or spirit of the restrictions set forth in his non-compete agreement with BAE, and BAE knew this. Id. ¶ 61.

Nonetheless, beginning in late May 2012, BAE, both verbally and in writing, contacted ALION and Plaintiff demanding that ALION immediately fire Plaintiff, or that Plaintiff immediately resign, and threatened legal action against both of them if neither of these events occurred, including the putative threat of seeking a TRO and/or preliminary injunction. Id. ¶ 63. During the course of threatening ALION and Plaintiff, BAE represented to ALION that its employment of Plaintiff was a violation of Plaintiff's non-compete agreement with BAE, which BAE knew was false and a complete mischaracterization of the non-compete restriction. Id. ¶ 64. BAE was well aware that ALION's employment of Plaintiff in no way violated either the letter or spirit of the non-compete or placed ALION and BAE in competition with one another. Id. In an email to ALION's counsel on June 5, 2012, BAE in-house counsel went further and falsely stated that ALION's employment of Plaintiff constituted a "direct violation of [Plaintiff]'s non-compete that are probably not capable of being mitigated." Id. ¶ 65. In truth, ALION's employment of Plaintiff did not create any competition between the two companies and did not cause BAE to incur any injury or damage that required any "mitigation." Id.

ALION went to great lengths to assure BAE that it considered BAE to be a valuable teammate and partner; that the two companies are not competitors; that ALION did not hire Plaintiff to compete with BAE; that its hiring of Plaintiff did not threaten BAE and would not

result in any competition between the two companies; and outlined for BAE the steps it would take to assuage BAE of any of its concerns and to ensure that there would be no competition between the two companies resulting from Plaintiff's employment with ALION. Id. ¶ 66. Despite these assurances, and how plain it was that ALION's employment of Plaintiff did not result in any competition between ALION and BAE, BAE continued to demand the immediate termination of Plaintiff's employment with ALION and continued to threaten ALION and Plaintiff with legal action if its demand was not complied with. Id. ¶ 67. BAE made clear that it wanted ALION to fire Plaintiff (or for Plaintiff to resign) *regardless* of whether his employment with ALION actually caused or created any competition between the two companies. Id.

When BAE made these threats, it knew there was no basis or merit to the lawsuit it was threatening to file, and knew that any claim that Plaintiff had violated the non-compete by going to work with its teammate and partner, ALION, had no merit or justification whatsoever. Id. ¶ 68. Even if BAE had some belief in the merits of such a suit, it nevertheless threatened to institute such a suit in bad faith and for the sole purpose of harassing Plaintiff, and without any intention of bringing such a suit to a definitive adjudication. Id. ¶ 69. BAE threatened Plaintiff and ALION with baseless litigation, not to protect any legitimate business or economic interest, as none were threatened, but because it did not want Plaintiff working *anywhere* in the Navy marketplace or BAE marketplace, *regardless* of whether such employment was covered by the non-compete or whether a new employment would result in any actual or direct competition with BAE. Id. ¶ 70.

BAE, through Mr. Busch, said as much to ALION in a telephone call he had with Mr. Riddick at ALION on or around June 7, 2012, that BAE expected Plaintiff to stay out of the Navy and BAE marketplace for the duration of the non-compete. Id. ¶ 71. BAE repeated this to

Plaintiff in a conversation Plaintiff had with BAE's in-house counsel, Greg Hayken, on or around June 14 and 15, 2012. Id. ¶ 72. Mr. Hayken made clear to Plaintiff that his seeking and obtaining employment in a similar position, either as a teammate or competitor, during the one-year period of the non-compete, "was not acceptable" to BAE. Id. BAE's efforts were directed at preventing Plaintiff from becoming employed in the Navy and BAE marketplaces even by a non-competing employer, and not to the advancement of any competitive interests over Plaintiff or ALION, as no such interests were implicated or threatened by ALION's employment of Plaintiff. Id. ¶ 73.

As a direct consequence of BAE's coercion, intimidation, and threats of instituting a costly baseless suit, ALION concluded that it had no choice but to terminate Plaintiff's employment, and did so on June 15, 2012. Id. ¶ 74. Feeling the economic pressure of BAE's threats, ALION concluded that a legal battle with BAE over Plaintiff's continued employment with ALION might lead to retaliatory action by BAE on the many contracts on which the two companies teamed, which could cause a loss of jobs for other ALION employees and diminish ALION's revenue stream. Id. ¶ 75. In this regard, BAE is a much larger company than ALION in size and revenue. Id. By threatening Plaintiff and ALION with litigation that it knew was baseless unless ALION fired Plaintiff, BAE improperly exerted a superior power over ALION and Plaintiff that was unrelated to any actual competition between it and ALION, or between it and Plaintiff. Id.

COUNTS 2 and 3 of the Amended Complaint assert that a third-party (BAE) intentionally interfered with Plaintiff's at-will employment relationship with his new employer (ALION) through the use of wrongful or improper means. The question thus presented is whether the common law of the District of Columbia provides a cause of action for intentional

third-party interference with at-will employment. As confirmed by this Court, the case law of

the District does not answer this precise question.

> **B.** **This Court Has Confirmed That The Common Law Of The District Does Not Address The Specific Question Of Third-Party Interference With At-Will Employment And That It Is An Open Question In This Jurisdiction**
>
>> **1.** **The D.C. Court of Appeals has not decided the question of third-party interference with at-will employment, and in McManus showed some receptivity towards recognizing the claim**

According to BAE, the D.C. Court of Appeals' decisions in Bible Way Church v. Beards,

680 A.2d 419 (D.C. 1996), and McManus v. MCI Communications Corp., 748 A.2d 949 (D.C.

2000), resolve the question of third-party interference with at-will employment. They do not.

Bible Way involved a church employee who was discharged by her supervisor, the

church pastor, because her position was no longer needed. There was no interference with

employment by an unrelated outside or third party; the case concerned an employee who sued

her current employer and supervisor because she did not appreciate being terminated after more

than thirty years of service. **In this context** the D.C. Court of Appeals upheld the trial court's

dismissal of the tortious interference claim because "[t]he [plaintiffs] do not allege that at any

time there was a formal contract of employment or any agreement ... fixing a period of time for

[plaintiff's] employment." 680 A.2d at 432. Interference by a third-party was never an issue in

the case.

McManus was largely a discrimination case under the D.C. Human Rights Act involving

another employee who was discharged by her supervisor because her position had been

eliminated. Again, this was another case where an employee sued his employer and supervisor

for "interfering" with her employment with the same employer, and did not involve interference

with employment by an outside third-party. **In this context** the D.C. Court of Appeals held "that, as an at-will employee, appellant did not have a contractual employment relationship she could use as the basis for a suit for tortuous interference with a contractual relationship." 748 A.2d at 957 (citing Bible Way).

Neither Bible Way nor McManus dealt with allegations of a third party – someone outside the employment relationship – interfering with a plaintiff's employment with another, unrelated employer. Rather, these cases dealt with allegations of a supervisor's "interference" with a subordinate's employment with the same employer. **This Court noted this significant distinction** in Daisley v. Riggs Bank, N.A., 372 F.Supp.2d 61, 73 n. 6 (D.D.C. 2005) (confirming that Bible Way should not be "overstated" because it "only blocked an employee's suit against her employer," and that "while McManus went further," it only "barr[ed] an intentional interference suit against the employee's supervisors").

Indeed, in McManus, the court made clear that it was declining the opportunity to recognize a cause of action for tortious interference with prospective at-will employment based on the facts that were before it in that case. 748 A.2d at 957 ("The court never has held that an employee can maintain a suit for interference with prospective advantage where her expectancy was based on an at-will relationship, **and we do not do so now**") (emphasis added). The court also based its ruling on a doctrine that applied in McManus but has no relevance to third-party interference cases. Id. at 958 ("[Plaintiff] could not proceed against [defendant] because it is axiomatic that **an employer cannot interfere with its own contract**") (emphasis added). The court ended its analysis by distinctly leaving open the possibility of third-party interference with employment expectancies in the at-will context "if [plaintiff] produced facts that suggest that **[defendant] procured a discharge of the plaintiff for an improper or illegal purpose,**" citing

W. Keeton, Prosser & Keeton on the Law of Torts § 129, at 990 (5th ed. 1984).  Id. (emphasis added).

Even more telling of the fact that third-party interference with at-will employment remains an open question in the District is the court's citation in McManus to its previous decision in Carr v. Brown, 395 A.2d 79 (D.C. 1978), where the court, in analyzing the tort of interference with prospective advantage, endorsed the notion that a legally recognizable and protected employment expectancy includes "those of future contractual relations, **such as the prospect of obtaining employment ... and the likelihood that the plaintiff would have received [the employment] if the defendant had not interfered.**" Id. at 84 (emphasis added) (citing Prosser, Torts, § 130 at 950).  McManus did not overrule this language from Carr, which is evident from the **post-McManus decisions of this Court** which continue to cite the language from Carr that the "prospect of obtaining employment" is a legally recognizable and protected expectancy that can form the basis of a tortious interference claim.  See Sabre Int'l Sec. V. Torres Advanced Enter. Solutions, 820 F.Supp.2d 62, 77 (D.D.C. 2011); Hopkins v. Blue Cross and Blue Shield Assoc., 2010 U.S. Dist. LEXIS 134730, *18 (D.D.C. Dec. 21, 2010); PM Servs. Co. v. Odoi Assocs., 2006 U.S. Dist. LEXIS 655, *109 (D.D.C. Jan. 4, 2006); see also Kwang Dong Pharm. Co. v. Han, 205 F.Supp.2d 489, 496 (D. Md. 2002) (a post-McManus case also citing Carr concerning a tortious interference claim arising under DC law).

    **2.**    **Acknowledging that third-party interference with at-will employment remains an open question in the District, this Court, like the D.C. Court of Appeals, has shown receptivity to recognizing such a claim**

With one exception, none of the cases cited by BAE dealt with the issue of third-party interference with at-will employment.  See, e.g., Daisley, 372 F.Supp.2d at 72-73 (co-worker accused other co-workers of interfering with his employment with the same employer); Riggs v.

Home Builders Institute, 203 F.Supp.2d 1, 22-23 (D.D.C. 2002) (corporate officer accused officers of the employer's affiliate entity of interfering with his employment); Mark Marketing Serv. v. Geoplast, S.p.A., 753 F.Supp.2d 141, 163 (D.D.C. 2010) (one company accused another company with whom it had a contract for services of interfering with its employee's employment); Sheppard v. Dickstein, Shapiro, Morin & Oshinsky, 59 F.Supp.2d 27, 33-34 (D.D.C. 1999) (same facts as Daisley where co-worker accused other co-workers of interfering with his employment with the same employer).

The one exception is Judge Greene's decision in Dale v. Thomason, 962 F. Supp. 181, 183-84 (D.D.C. 1997), in which it was concluded, erroneously, that Bible Way resolved the matter of third party interference with at-will employment.  As shown earlier, Bible Way did not resolve that issue, as Judge Kennedy correctly pointed out in Daisley, 372 F.Supp.2d at 73 n. 6. The Dale decision is also at odds with the more recent observations of Chief Judge Lambert and Judge Kennedy (discussed below) that a cause of action for third-party interference with at-will employment remains an open question under D.C. law.  Id; Zelaya, 587 F.Supp.2d at 287.  The Dale decision is also contrary to earlier decisions of this Court that recognized a cause of action for third-party interference with at-will employment. See Donohoe v. Watt, 546 F. Supp. 753, 757 (D.D.C. 1982) (stating in an at-will employment case, "It is a well settled principle of law that this tort [tortious interference] arise only when there is an interference with a contract between the plaintiff and a third party"); Newman v. Legal Services Corp., 628 F. Supp. 535, 541 (D.D.C. 1986) (at-will employment case stating the same principle).

Indeed, as this Court more accurately observed, whether a plaintiff has a cause of action for third-party interference with at-will employment is an open issue in the District of Columbia:

> Dale interpreted Bible Way to hold that "[a] third party who interferes with
> such a tenuous relationship [at-will employment] is not liable to the employee

since no wrongful breach of contract can result from his interference." 962 F. Supp. at 184.  Dale, however, overstates the scope of Bible Way, which only blocked an employee's suit against her employer.  While McManus went further, barring an intentional interference suit against the employee's supervisors, and denying a claim based on prospective as well as current contractual relations, this court notes that *the question of whether an at-will employee may recover against a third party unrelated to the employer has not been clearly resolved by courts in this jurisdiction.*

Daisley, 372 F.Supp.2d at 73 n. 6 (emphasis added).

After noting the openness of the question, the Court expressed receptivity to such a cause

of action by pointing out some of the compelling authority that supports it:

> The Supreme Court has indicated that "third-party interference with at-will employment relationships" has "long been a compensable injury under tort law." Haddle v. Garrison, 525 U.S. 121, 126, 142 L. Ed. 2d 502, 119 S. Ct. 489 (1998) (citing THOMAS COOLEY, 2 LAW OF TORTS 589-591 (3d ed. 1906); Truax v. Raich, 239 U.S. 33, 38, 60 L. Ed. 131, 36 S. Ct. 7 (1915) ("The fact that the employment is at the will of the parties, respectively, does not make it one at the will of others...the unjustified interference of third persons is actionable although the employment is at will."); W. KEETON ET AL., PROSSER AND KEETON ON LAW OF TORTS § 129, pp. 995-96, n.83 (5th ed. 1984)); see also Worrell v. Henry, 219 F.3d 1197, 1214 n.4 (10th Cir. 2000) ("an at-will employee who has no wrongful termination action against his employer may still be able to assert an intentional interference claim against a third party.").

Id.

This Court again noted the openness of the issue in Zelaya v. UNICCO Service Co., 587

F.Supp.2d 277, 287 (D.D.C. 2008):

> Echoing the observations expressed in Daisley, the Court recognizes existing D.C. case law has not altogether adequately addressed the precise factual scenario presented here, where a third party former employer is alleged to have interfered with a parties prospective contractual relations with a potential future employer.

As in Daisley, and as the D.C. Court of Appeals in McManus, the Court in Zelaya

appeared to entertain the notion of allowing an at-will plaintiff to proceed with a third-party

tortious interference claim, but not on the facts that were before it in that case:

However, the Court does not believe plaintiff's allegations in this case provide an occasion to make the judicial leap necessary to hold that D.C. law permits a prospective at-will employee to recover against a third party unrelated to the potential employer based on a theory of intentional interference with prospective contractual relations.

Id.

**C.     The Court Must Predict How The D.C. Court of Appeals Would Decide The Open Question Of An At-Will Plaintiff Proceeding With A Third-Party Tortious Interference Claim – And Guidance Exists For The Task[2]**

Where "District of Columbia [ ] is silent on the **specific issue whether a plaintiff may maintain an action** … [t]he lack of clarity of tort law in this jurisdiction [ ] does not absolve this court of the duty of resolving the issue in the manner which, in our best lights, we predict that the District of Columbia Court of Appeals would were it presented with the question." Friends for All Children, Inc. v. Lockheed Aircraft Corp., 746 F.2d 816, 824 (D.C. Cir. 1984) (emphasis added).  In conducting this task, "[the Court] should **look to Maryland law first** . . . because . . . the District of Columbia derives its common law from that state and because District of Columbia courts have in the past looked to Maryland law for guidance." Conseco Industries, Ltd. v. Conforti and Eisele, Inc., 627 F.2d 312, 315 (D.C. Cir. 1980) (emphasis added); see also Hull v. Eaton Corp., 825 F.2d 448, 453-54 (D.C. Cir. 1987); Hickey v. Scott, 796 F.Supp.2d 1, 4 n. 3 (D.D.C. 2011) (explaining where "**there is no controlling D.C. authority on the precise issue presented to the Court** … the Court will look to available Maryland law, as well as law from other jurisdictions") (emphasis added); Napoleon v. Heard, 455 A.2d 901, 903 (D.C. 1983) ("Maryland is the source of the District's common law and an especially persuasive authority when the District's common law is silent").

---

[2] The District's certification rule does not permit federal district courts to certify questions of law to the D.C. Court of Appeals. D.C. Code § 11-723.

13

In addition, the Court may consider "general principles of tort law, the *Restatement (Second) of Torts*, and the law of other jurisdictions." Friends for All Children, 746 F.2d at 824-25. The Court may also consider decisions of the Supreme Court, Gerace v. Liberty Mut. Ins. Co., 264 F. Supp. 95, 97 (D.D.C. 1966), as well as "scholarly works," Beaty v. Republic of Iraq, 480 F.Supp.2d 60, 94 (D.D.C. 2007).

### D. The D.C. Court of Appeals Would Permit An At-Will Employee To Pursue A Third-Party Interference Claim Where Wrongful Or Improper Means Are Alleged

#### 1. Where a gap exists in D.C. law, the common law of Maryland is followed, and the common law of Maryland permits an at-will cause of action for third-party interference

Under the common law of Maryland, a cause of action exists when a contract **terminable at will** is intentionally interfered with **in the name of competition** by a third party who employs **wrongful or improper means to accomplish the interference.** Macklin v. Robert Logan Associates, 334 Md. 287, 304-05, 639 A.2d 112, 120-21 (1994). Maryland common law has long applied the concept of third-party interference to at-will employment. See, e.g., Goldman v. Harford Road Bldg. Ass'n, 150 Md. 677, 681-82, 133 A. 843, 845 (1926); Knickerbocker Ice Co. v. Gardiner Dairy Co., 107 Md. 556, 564-65, 69 A. 405, 408 (1908); Lucke v. Clothing Cutters' & Trimmers' Assembly, 77 Md. 396, 408-11, 26 A. 505, 508-09 (1893). For a recent MD case, see D.J. Diamond Imports, LLC v. Silverman Consultants, LLC, 2012 U.S. Dist. LEXIS 5755, *18-19 (D. Md. Jan. 18, 2012) ("While there is a 'broader right to interfere' where a contract is terminable at will, the scope of that right is not unlimited. A plaintiff can still bring a claim for intentional interference with a terminable at will contract if he can establish that the third party acted 'improperly or wrongfully'").

Importantly, the common law of Maryland incorporates the three relevant provisions of the Restatement (Second) of Torts that bear upon this matter: sections 766, 767, and 768.[3] Section 768, entitled "Competition as Proper or Improper Interference," has direct application to the case at hand:

> One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation, if
>
> (a) the relation concerns a matter involved in the competition between the actor and the other and
>
> (b) the actor does not employ wrongful means and
>
> (c) his action does not create or continue an unlawful restraint of trade and
>
> (d) his purpose is at least in part to advance his interest in competing with the other.

Macklin, 334 Md. at 297-308, 639 A.2d at 117-22 (adopting section 768); Alexander & Alexander, Inc. v. B. Dixon Evander & Assocs., 336 Md. 635, 657, 650 A.2d 260, 271 (1994) (same); Natural Design, Inc. v. The Rouse Co., 302 Md. 47, 73, 485 A.2d 663, 676 (1984) (same).

Thus, under Maryland common law, an at-will plaintiff has a cause of action against a third-party interferer if the third party employs wrongful or improper means, creates an unlawful restraint of trade, or is advancing no legitimate interest in competing with another.[4] Maryland common law also incorporates § 766 of the Restatement (Second) of Torts, Macklin, 334 Md. at 297, 639 A.2d at 117; Natural Design, Inc. v. Rouse Co., 302 Md. 47, 70, 485 A.2d 663, 674

---

[3] This is significant because D.C. courts have adopted and applied these same three sections of the Restatement of Torts. See infra.

[4] These are the allegations concerning BAE in the pending case. See Amd. Compl. ¶¶ 63-75.

(1984); Sharrow v. State Farm Mut. Auto. Ins. Co., 306 Md. 754, 761, 501 A.2d 492, 496

(1986), which states:

> One who intentionally and improperly interferes with the performance of a
> contract (except a contract to marry) between another and a third person by
> inducing or otherwise causing the third person not to perform the contract,
> is subject to liability to the other for the pecuniary loss resulting to the other
> from the failure of the third person to perform the contract.[5]

The comments to Section 766 make clear that the principle applies to relationships that

are terminable at will when improper means are used by a third party to interfere with it:

> [T]here is a general duty not to interfere intentionally with another's reasonable
> business expectancies of trade with third persons, *whether or not they are secured
> by contract, unless the interference is not improper under the circumstances* …
> The added element of a definite contract may be a basis for greater protection; but
> some protection is appropriate against improper interference with reasonable
> expectancies of commercial relations *even when an existing contract is lacking* …
> A similar situation exists with a contract that, by its terms or otherwise, permits the
> third person to terminate the agreement at will.  Until he has so terminated it, the
> contract is valid and subsisting, *and the defendant may not improperly interfere
> with it* … If the defendant was a competitor regarding the business involved in the
> contract, *his interference with the [at-will] contract may be not improper.*

Comments b, c, and g to Restatement (Second) of Torts § 766 (emphasis added).

"Wrongful or improper means" under Maryland law includes the use of

misrepresentations of facts and the threat of groundless civil litigation in bad faith to accomplish

the interference.  Macklin, 334 Md. at 301, 639 A.2d at 119; Alexander & Alexander, Inc. v. B.

Dixon Evander & Assocs., 336 Md. 635, 657, 650 A.2d 260, 271 (1994); K & K Management v.

Lee, 316 Md. 137, 166, 557 A.2d 965, 979 (1989) (citing Prosser, Law of Torts, § 130, 952-53

(4th ed. 1971).[6]  This is based upon Maryland's adoption of Section 767 of the Restatement

---

[5] This is the legal theory underlying COUNTS 2 and 3 against BAE.

[6] As discussed ahead, this Court has recognized the same improper means in cases arising under D.C. law.

(Second) of Torts, <u>Macklin</u>, 334 Md. at 307, 639 A.2d at 122; <u>Winterernitz v. Summit Hills Joint</u>

<u>Venture</u>, 73 Md. App. 16, 25, 532 A.2d 1089, 1093 (1987), which states in its comments:

> Litigation and the threat of litigation are powerful weapons. When wrongfully instituted, litigation entails harmful consequences to the public interest in judicial administration as well as to the actor's adversaries. The use of these weapons of inducement is ordinarily wrongful if the actor has no belief in the merit of the litigation or if, though having some belief in its merit, he nevertheless institutes or threatens to institute the litigation in bad faith, intending only to harass the third parties and not to bring his claim to definitive adjudication.

Comment c to Restatement (Second) of Torts § 767.[7]

Sections 766 and 768 of the Restatement, both of which have been incorporated into

Maryland common law (and D.C. common law as well, <u>infra</u>), provide illustrations of the

**improper use of threats** that apply by analogy to the case at hand:

> A is B's employer and C is the carrier of A's employer's liability insurance. B, having been injured in the course of his employment, presents his claim. He rejects an offer of settlement made by C on the ground of its inadequacy and brings suit on his claim. C informs B that unless he will accept the settlement he will lose his job with A. Upon B's refusal, *C causes A to discharge B by threatening to cancel all A's insurance with C. C is subject to liability to B and the interference is improper under the rule stated in this Section.*

Comment d, illustration 3, Restatement (Second) Torts § 768 (emphasis added).

> Upon hearing of B's contract with C, A writes to B as follows: "I cannot tolerate your contract with C. You must call it off. I am sure that our continued relations will more than compensate you for any payment you may have to make to C. *If you do not advise me within ten days that your contract with C is at an end, you may never expect further business from me." Thereupon B breaks his contract with C. A has induced the breach and is subject to liability under*

---

[7] These are the allegations against BAE, that it threatened a baseless but potentially costly suit against Plaintiff and ALION if ALION did not immediately fire Plaintiff, knowing that ALION's employment of Plaintiff did not harm or threaten BAE in any way. "When BAE made these threats, it knew there was no basis or merit to the lawsuit it was threatening to file, and knew that any claim that Plaintiff had violated the non-compete by going to work with its teammate and partner, ALION, had no merit or justification whatsoever." Amd. Compl. ¶ 68. "Even if BAE had some belief in the merits of such a suit, it nevertheless threatened to institute such a suit in bad faith and for the sole purpose of harassing Plaintiff, and without any intention of bringing such a suit to a definitive adjudication." <u>Id.</u> ¶ 69. "BAE threatened Plaintiff and ALION with baseless litigation, not to protect any legitimate business or economic interest, as none were threatened, but because it did not want Plaintiff working *anywhere* in the Navy marketplace or BAE marketplace, *regardless* of whether such employment was covered by the non-compete or whether a new employment would result in any actual or direct competition with BAE." <u>Id.</u> ¶ 70.

*the rule stated in this Section.*

Comment l, illustration 2, Restatement (Second) Torts § 766 (emphasis added).

Comment e to Section 768 – which the Maryland Court of Appeals has specifically adopted, <u>see</u> <u>Alexander</u>, 336 Md. at 657, 650 A.2d at 271 – describes the improper use of superior economic power, unrelated to a competitive purpose, to accomplish the interference, which has direct application to the case at hand:

> Superiority of power in the matters relating to competition is believed to flow from superiority in efficiency and service. If the actor succeeds in diverting business from his competitor by virtue of superiority in matters relating to their competition, he serves the purposes for which competition is encouraged. If, however, he diverts the competitor's business *by exerting a superior power in affairs unrelated to their competition* there is no reason to suppose that his success is either due to or will result in superior efficiency or service and thus promote the interest that is the reason for encouraging competition. For this reason *economic pressure on the third person in matters unrelated to the business in which the actor and the other compete is treated as an improper interference.*

Comment e to Restatement (Second) Torts § 768 (emphasis added).[8]

Comment g to Section 768 – also adopted by the Maryland Court of Appeals, <u>see</u> <u>Alexander</u>, <u>supra</u> – states:

> [I]f his conduct is directed solely to the satisfaction of his spite or ill will and *not at all to the advancement of his competitive interests over the person harmed*, his interference is held to be improper.

Comment g to Restatement (Second) of Torts § 768 (emphasis added).[9]

Significantly, the D.C. Circuit has applied provisions of the Restatement (Second) of Torts to cases arising under D.C. law based on the Maryland Court of Appeals' adoption of the same Restatement provisions. See <u>Hull v. Eaton Corp.</u>, 825 F.2d 448, 453-54 (D.C. Cir. 1987);

---

[8] <u>See</u> Amd. Compl. ¶¶ 74-75 (describing BAE's use of superior economic power to accomplish its interference with Plaintiff's employment with ALION).

[9] <u>See</u> Amd. Compl. ¶¶ 64-65, 67, 70, 73 (BAE was not motivated by a competitive interest in interfering with Plaintiff's employment with ALION, as no competitive interests were at stake).

cf. Gray v. American Express Co., 743 F.2d 10, 17 (D.C. Cir. 1984) (applying Restatement

(Second) of Conflicts of Law provisions adopted by the Maryland Court of Appeals).

There is simply no doubt that, under Maryland common law, Plaintiff's third-party

tortious interference claims are cognizable and can proceed.

**2.   Like MD courts, DC courts have adopted the same provisions
of the Restatement (Second) of Torts which have recognized
a cause of action for third-party interference with at-will
employment since 1939**

"District of Columbia courts follow the Restatement (Second) of Torts." Nnadili v.

Chevron USA, 435 F.Supp.2d 93, 99 (D.D.C. 2006).  More specifically, the law of the District of

Columbia incorporates the same Restatement (Second) of Torts provisions codified under

Maryland common law that have direct application to the case at hand.  **For adoption of**

**Restatement Section 766,** see Onyeoziri v. Spivok, 44 A.3d 279, 286 (2012); Paul v. Howard,

754 A.2d 297, 309 & n. 23 (2000); Sorrells v. Garfinckel's Brooks Brothers Miller & Rhoads,

Inc., 565 A.2d 285, 290 (1989); DeKine v. District of Columbia, 422 A.2d 981, 988 (D.C. 1980).

**For adoption of Restatement Section 767,** see Onyeoziri, 44 A.3d at 289-91; Amtrak v. Veolia

Transp. Servs., 791 F. Supp.2d 33, 58, 61 (D.D.C. 2011); Bowhead Info. Tech. Serv., LLC v.

Catapult, Ltd., 377 F.Supp.2d 166, 175 (D.D.C. 2005); Sorrells, 565 A.2d at 290.  **For adoption**

**of Restatement Section 768,** see Modis, Inc. v. Infotran Sys., Inc., 2012 U.S. Dist. LEXIS

140878, *12 (D.D.C. Sept. 28, 2012); Mercer Mangmt. Consulting v. Wilde, 920 F. Supp. 219,

239 (D.D.C. 1996); The Int'l City Mangmt. Assoc. Retirement Corp. v. Watkins, 726 F. Supp. 1,

6 (D.D.C. 1989).

Indeed, the Restatement has recognized the tort of third-party interference with at-will

employment since 1939, in its First Restatement of Torts, § 766 cmt. c. Furthermore, this Court

has recognized that "resort to ... civil suits ... is improper and not protected  competition,"

International City, 726 F. Supp. at 6, which is a central allegation against BAE in the pending

case. See also Jane Lyons Advertising, Inc. v. Cook, 1998 U.S. Dist. LEXIS 14708, *26 (D.D.C.

Mar. 31, 1998) (denying motion to dismiss tortious interference claim where it was alleged that

defendant used the threat of legal action to accomplish the interference); Bowhead Information

Tech. Servs., LLC v. Catapult Tech., Ltd, 377 F.Supp.2d 166, 175-76 (D.D.C. 2005) (also

denying motion to dismiss tortious interference claim where it was alleged that defendant used

even the threat of a "colorable" claim against a competitor to accomplish the interference)

(discussed in greater detail below).

   Misrepresentation of facts has also been recognized as an improper tactic for

accomplishing an interference. Sheppard, 59 F.Supp.2d at 34. This, too, has been pled about

BAE. Amd. Compl. ¶¶ 64-65 (falsely stating to ALION that its employment of Plaintiff violated

the terms of Plaintiff's non-compete and caused BAE to suffer damages "not capable of being

mitigated," when no such violation occurred and ALION's employment of Plaintiff resulted in

absolutely no harm to BAE).

### 3.   The Supreme Court has recognized third-party interference with at-will employment since 1915

   As noted, Supreme Court decisions are relevant to predicting how the D.C. Court of

Appeals will rule on a matter. Gerace, 264 F. Supp. at 97. While the Supreme Court in Haddle v.

Garrison, 525 U.S. 121, 126-27, 119 S. Ct. 489, 492-93, 142 L.Ed.2d 502 (1998), dealt with an

issue of permissible remedies under a federal statute (42 U.S.C. § 1985), it recognized that "the

sort of harm alleged by petitioner here – essentially third-party interference with at-will

employment relationships – ... **has long been a compensable injury under tort law**, and we

see no reason to ignore **this tradition** in this case." Id. at 126; 119 S. Ct. at 492 (emphasis

added). The Supreme Court stated, "One who maliciously and without justifiable cause, induces

an employer to discharge an employee,[10] by means of false statements,[11] threats or putting in fear,[12] or perhaps by means of malevolent advice and persuasion,[13] is liable in an action of tort to the employee for the damages thereby sustained. ***And it makes no difference whether the employment was for a fixed term not yet expired or is terminable at the will of the employer.***" Id. (citing 2 T. Cooley, Law of Torts 589-591 (3d ed. 1906)) (italics in original).

Quoting from its 1915 decision in Truax v. Raich, 239 U.S. 33, 38, 60 L. Ed. 131, 36 S. Ct. 7, the Court stated in Haddle:

> The fact that the employment is at the will of the parties, respectively, does not make it one at the will of others. The employee has manifest interest in the freedom of the employer to exercise his judgment without illegal interference or compulsion and, by the weight of authority, the unjustified interference of third persons is actionable although the employment is at will.

Id.

The Court stated further in Haddle: "The kind of interference with at-will employment relations alleged here is merely a species of the traditional torts of intentional interference with contractual relations and intentional interference with prospective contractual relations … This protection against third-party interference with at-will employment relations is still afforded by state law today." Id. at 126-27; 119 S. Ct. at 492 (citing the *Restatement (Second) of Torts § 766* that has been incorporated into both DC and MD law, and citing the same treatise cited by this Court in Daisley, 372 F.Supp.2d at 73 n. 6, specifically, Prosser, Law of Torts § 129, pp. 995-996, and n. 83 (5th ed. 1984)).

---

[10] BAE induced ALION to discharge Plaintiff. Amd. Compl. ¶¶ 63-75.

[11] BAE made false statements of fact to induce ALION's firing of Plaintiff. Amd. Compl. ¶¶ 64-65.

[12] BAE threatened Plaintiff and ALION with baseless litigation to induce ALION's firing of Plaintiff. Amd. Compl. ¶¶ 63, 67-70.

[13] The gravamen of COUNTS 2 and 3 is that BAE coerced and intimidated ALION into firing Plaintiff, without any competitive purpose or interest at stake.

4.     **The vast majority of jurisdictions throughout the nation recognize a cause of action for third-party interference with at-will employment**

The law of other jurisdictions is also relevant to a consideration of how the D.C. Court of Appeals is likely to rule on a matter. Friends for All Children, 746 F.2d at 824-25; Hickey, 796 F.Supp.2d at 4 n. 3. Here, a ruling that permits Plaintiff to pursue a third-party interference claim against BAE would be consistent with the **vast majority of jurisdictions throughout the nation** that permit such a cause of action involving at-will employment. See Lauster v. Grand Sierra Resort Corp., 2010 U.S. Dist. LEXIS 137848, *10 (D. Nev. Dec. 29, 2010) (**"[T]he weight of authority** from sister jurisdictions indicates that third parties can be liable for tortious interference with at-will employment relationships where their actions are wrongful") (emphasis added); Canuel v. Oskoian, 184 F. Supp. 70, 74-75 (D. R.I. 1960) (a cause of action for third-party interference with at-will employment is the **"clear weight of authority"** and has been **"adopted by the vast majority of American jurisdictions"**) (emphasis added); McNickle v. Phillips Petroleum Co., 2000 OK 28, **19-20 & n. 33 (2000) (collecting cases of third party interference with at-will employment from Alaska, Arizona, Arkansas, California, Georgia, Illinois, Indiana, Kansas, Massachusetts, Minnesota, North Carolina, Ohio, Oregon, Tennessee, and Wisconsin);[14] see also Liability for Interference with At-Will Business Relationship, 5 A.L.R. 4th 9, § 2a (2012) ("Interference with at will business relationships, which … includes interference with existing, non-contractual relationships … **is now a recognized tort in nearly all jurisdictions"**) (emphasis added); Tortious Interference with Contract in the At-Will Employment Context, 79 U. Det. Mercy L. Rev. 503, 511 (2002) ("It is important to note that an

---

[14] Other states include Maryland (discussed above) and Virginia, see Duggin v. Adams, 234 Va. 221, 225-28, 360 S.E.2d 832, 835-37 (1987).

**overwhelming number of jurisdictions** permit the interference with contract tort in an at-will

employment setting") (emphasis added).

> **5.    This Court in <u>Bowhead</u> has already recognized a cause of
> action for third-party interference with at-will employment
> when the improper mean of threatening civil litigation is
> alleged**

Although the case of <u>Bowhead Information Tech. Servs., LLC v. Catapult Tech., Ltd</u>, 377

F.Supp.2d 166, 175-76 (D.D.C. 2005) dealt with a slightly different issue (one company sued

another company for the latter's refusal to release its former at-will employees from a non-

compete restriction to allow them to work at-will for the former company), the Court accepted

the notion – **in the context of at-will employment expectancies**, and relying upon the

Restatement (Second) of Torts – that a former employer's threat of **even a "colorable claim"**

against a former employee for allegedly violating a non-compete obligation can constitute

improper conduct for purposes of a tortious interference claim:

> The question this case presents, therefore, is whether the threat to bring a *colorable*
> cause of action against a competitor or employee can be improper conduct for
> purposes of a tortious interference claim. ***The Restatement indicates that the***
> ***answer is yes.*** The text of *comment c to § 767* states that *a lawsuit or threat of*
> *lawsuit is wrongful not only "if the actor has no belief in the merit of the litigation,"*
> *but also if the actor, having some belief in the merit of the suit, "nevertheless institutes*
> *or threatens to institute the litigation in bad faith, intending only to harass the third*
> *parties and not to bring his claim to definitive adjudication."* Id. The weight of the
> case law also seems to support a rule that *a tortious interference claim can be premised*
> *on even a colorable claim that is brought exclusively in bad faith.* See, e.g., Nat'l
> Ass'n of Prof'l Baseball Leagues v. Very Minor Leagues, Inc., 223 F.3d 1143, 1150
> (10th Cir. 2000) (granting summary judgment on tortious interference claim
> because "Very Minor Leagues has not demonstrated that Professional Baseball
> Leagues could not have had a belief in the merit of the litigation" and "Very
> Minor Leagues has not presented evidence that Professional Baseball Leagues'
> act of bringing suit was *intended only to harass Very Minor Leagues*") (emphasis
> added); Jane Lyons Adver. v. Cook, 1998 U.S. Dist. LEXIS 14708, No. 97-01069,
> 1998 WL 164775, at *7 (D.D.C. Mar. 31, 1998) (denying motion to dismiss
> tortious interference claim where plaintiff alleged, among other things, that

defendant "sent a letter threatening legal action" and "defendant's conduct was designed to interfere with the contract between plaintiff and Augustine and/or Stafford") ... *[T]his Court believes that District of Columbia courts would follow the Restatement and the cases cited above and hold that colorable suits may give rise to a tortious interference claim in the limited circumstance where the defendant brought or threatened to bring suit with the sole intention to harass.*

377 F.Supp.2d at 175-76 (bold emphasis added).

The pled allegations in the instant case are stronger than in <u>Bowhead</u>, since here, it is alleged that BAE did not even have a colorable basis for threatening a civil suit against Plaintiff or ALION because it knew that ALION's employment of Plaintiff did not violate Plaintiff's non-compete agreement with BAE in any way, and did not pose a threat, competitive or otherwise, to BAE. It is further alleged that "even if BAE had some belief in the merits of such a suit, it nevertheless threatened to institute such a suit in bad faith and for the sole purpose of harassing Plaintiff, and without any intention of bringing such a suit to a definitive adjudication." Amd. Compl. ¶ 69. This was also alleged in <u>Bowhead</u> and upon which the Court denied the motion to dismiss. It bears repeating that the employment expectancy at issue in <u>Bowhead</u> was **at-will**, as in the instant case. Because, as in <u>Bowhead</u>, "these allegations [ ] can plausibly be read to state a claim that [BAE]'s sole motivation in threatening a civil suit was to harass [Plaintiff]," <u>id</u>. at 176, the motion to dismiss Plaintiff's tortious interference claims should be denied as the motion was in <u>Bowhead</u>.

> **6.    Based on compelling authority, the D.C. Court of Appeals would permit Plaintiff's third-party interference claims to proceed in this case**

A cause of action for third-party interference with at-will employment is codified under the common law of Maryland, has been recognized by the Restatement of Torts for nearly 75 year and by the Supreme Court for nearly 100 years, and is recognized today by the vast majority

of jurisdictions throughout the nation.  Moreover, the D.C. Court of Appeals (in <u>McManus</u>) left open the possibility of such a claim, and this Court, on at least two occasions (<u>Daisley</u> and <u>Zelaya</u>) expressed receptivity to such a claim, and in one instance (<u>Bowhead</u>), permitted such a claim to go forward based on allegations of improper threats of civil litigation for accomplishing an interference with at-will employment.  In addition, in this case, **four improper means** for accomplishing the interference have been pled: misrepresentations, threat of baseless litigation, superior economic power devoid of a competitive interest, and malice towards Plaintiff.

Given this record of authority and the nature of the allegations pled, the Court can confidently predict that the D.C. Court of Appeals would permit Plaintiff to proceed with COUNTS 2 and 3 of the Amended Complaint.  Accordingly, the motion to dismiss these counts should be denied.[15]

## II.  THE MOTION TO DISMISS COUNT 4 SHOULD BE DENIED[16]

As the Defendant recognizes, every party to a contract has an implied duty of good faith and fair dealing.  There is also, however, an implicit condition that each party will cooperate with the other's performance.  "If a party to a contract **evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party,** he or she may be liable for breach of the implied covenant of good faith and fair dealing."

---

[15] Contrary to BAE's contention, the Amended Complaint alleges that BAE was well aware of Plaintiff's employment relationship with ALION; indeed, that it was Plaintiff himself who informed BAE.  Amd. Compl. ¶ 57. Moreover, BAE's suggestion that the Court disregard the Amended Complaint and base its ruling on the original complaint would effectively negate the rule that permits a plaintiff to amend his complaint once as a matter of right after a responsive pleading is filed.  <u>See</u> FRCP 15(a)(1).  It would also not be proper for other reasons.  <u>See Howard v. Gutierrez</u>, 474 F.Supp.2d 41, 55 (D.D.C. 2007) ("[A] court does not have any control over amendments as of right ... [and an] amended complaint supersedes the original complaint with respect to the contents of the pleadings"). Moreover, there is no rule which does away with a plaintiff's amendment right simply because his original pleading was not pled as artfully as it could have been or as well as the amended pleading.

[16] Because BAE opposes COUNT 4 on narrow grounds, only those grounds will be addressed.

Mero v. City Segway Tours of Washington D.C., LLC, 826 F. Supp. 2d. 100, 107 (D.D.C. 2011) (quoting Hais v. Smith, 547 A.2d 986, 987-88 (D.C. 1988)) (emphasis added).

In this case, BAE's interference with Plaintiff's employment with ALION constitutes interference with the performance of Plaintiff's obligation to refrain from certain employment under the Agreement, and evades the spirit of the Agreement. See e.g., L.G. Balfour Co., Inc., v. McGinnis, 759 F. Supp 840, 845 (D.D.C. 1991) (determining that a fact finder could reasonably find that the former employer breached its obligation to cooperate with former employee's best efforts by changing sales policy and not ensuring prompt delivery). Defendant's argument that BAE's interference could not be illicit because it did not implicate the "fruits" of the Agreement overemphasizes a single word to the detriment of logic. Plaintiff was obligated by the Waiver and Termination Agreement to refrain from seeking employment with a BAE competitor. Plaintiff did so, and sought employment with an employer who was not a BAE competitor.

The source of Defendant's confusion may come from the fact that Plaintiff has a negative, rather than positive, obligation under the Agreement. Plaintiff is not required to do something under the Agreement; he is required to refrain from doing something, namely seek employment with a competitor. This obligation is still capable of being interfered with by BAE, however. BAE's threats of litigation against Plaintiff's new employer, who was not a prohibited employer under the Agreement, effectively denied Plaintiff an implicit "fruit" of the Agreement – the right to seek employment with a non-competitor of BAE. If Defendant's position were the law, parties to contracts could disregard the spirit of contracts with impunity so long as the contracts involved negative, rather than positive, obligations. Such a legal theory defies common sense.

The three cases cited in support by the Defendant are easily distinguishable from the instant case, and in two instances are foreign opinions with no precedential value in this jurisdiction. The case of UBS AG v. Cournot Fin Prods., LLC, No. 10-0494, 2010 U.S. Dist. Lexis 76618 (S.D.N.Y. 2010), is a foreign case applying New York law, and found that the plaintiff had failed to plead an obligation distinct from the express contractual language in support of its claim. In Kuroda v. SPJS Holdings, LLC, 971 A. 2d 872, 888-89 (Del. Ch. 2009), the plaintiff made only conclusory allegations of harm, as compared to the specific breach of obligations here. And in Cambridge Holdings Group, Inc. v. Fed. Ins. Co., 357 F. Supp. 2d 89, 96 (D.D.C. 2004), the only District of Columbia case cited, the Court found there could be no good faith and fair dealing claim because there was no contract at all. In sum, the Defendant has cited to no cases with analogous facts to the case here.

Finally, Defendant's argument that Plaintiff "cannot show that BAE acted in bad faith" is meaningless under the standards governing a motion to dismiss. A motion to dismiss considers the sufficiency of the pleadings before the Court, not the sufficiency of evidence that has not yet been admitted. In any event, as discussed above, the Amended Complaint is replete with allegations of BAE's bad faith in this case. For these reasons, the motion to dismiss COUNT 4 should be denied.

## CONCLUSION

For the reasons stated, the motion to dismiss COUNTS 2-4 of the Amended Complaint should be denied, and the motion to dismiss COUNTS 1 and 5, which have been withdrawn, should be denied as moot.

January 25, 2013

Respectfully submitted,

_____
Peter C. Cohen
D.C. Bar No. 413247
pcohen@cbcblaw.com
CHARLSON BREDEHOFT COHEN
 BROWN & SAKATA, P.C.
11260 Roger Bacon Drive, Suite 201
Reston, VA 20190
(703) 318-6800 Telephone
(703) 318-6808 Facsimile

*Counsel for Plaintiff,*
 *Stephen D. Metz*

## CERTIFICATE OF SERVICE

I hereby certify on the 25th day of January, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Robert J. Smith
D.C. Bar No. 47951
rsmith@morganlewis.com
Joyce E. Taber
D.C. Bar No. 478681
jtaber@morganlewis.com
Lincoln O. Bisbee
*Pro hac vice*
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave, NW
Washington, DC 20004
(202) 739-3000 Telephone
(202) 739-3001 Facsimile

*Counsel for Defendant,*
 *BAE Systems Technology Solutions*
 *& Services, Inc.*

_____
Peter C. Cohen