IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEPHEN D. METZ | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:12cv1694 (GK) |
| | ) |
| BAE SYSTEMS TECHNOLOGY SOLUTIONS | ) |
| & SERVICES INC. | ) |
| | ) |
| Defendant. | ) |
| | ) |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION
TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

February 8, 2013

Robert J. Smith, Bar No. 162784
rsmith@morganlewis.com
Joyce E. Taber, Bar No. 478681
jtaber@morganlewis.com
Lincoln O. Bisbee, admitted *pro hac vice*
lbisbee@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC  20004

*Counsel for Defendant, BAE Systems
Technology Solutions & Services, Inc.*

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................................1

II.     THE COURT SHOULD DISMISS MR. METZ'S CLAIMS FOR TORTIOUS
        INTERFERENCE (COUNTS 2 AND 3) ...........................................................................3

        A.      D.C. Law Plainly Holds That At-Will Employment Cannot Support a Claim
                for Tortious Interference Because it Constitutes Neither a Contract Nor a
                Valid Business Expectancy ...........................................................................................4

                1.      The Court Should Look Beyond D.C. Law Only When D.C. Law is
                        Silent on an Issue and, Even Then, It Should First Examine
                        Analogous D.C. Decisions .................................................................................4

                2.      D.C. Law is Far From Silent on This Issue – Multiple Decisions
                        Affirm That At-Will Employment Constitutes Neither a Contract Nor
                        a Valid Business Expectancy ..........................................................................5

                3.      The Issue of "Third-Party Interference" is a Red Herring That Has No
                        Bearing On Whether Mr. Metz Has Alleged the Existence of a
                        Contract or Valid Business Expectancy Necessary For His Tortious
                        Interference Claims ..........................................................................................7

                4.      The D.C. Authority Cited by Mr. Metz Does Not Address the
                        Argument That At-Will Employment Cannot Support a Claim for
                        Tortious Interference Because it Constitutes Neither a Contract Nor a
                        Valid Business Expectancy ............................................................................12

                5.      The Maryland Authority Cited by Mr. Metz is a Poor Substitute for
                        D.C. Law Because it is Less Factually Analogous and Applies a
                        Different Framework ......................................................................................13

                6.      The Additional Authority Cited by Mr. Metz is Similarly Inapposite
                        and Extraneous to the Analysis of Tortious Interference Under D.C.
                        Law ..................................................................................................................14

        B.      Mr. Metz Has Not Stated a Claim for Tortious Interference Because His At-
                Will Employment With ALION Prevents His Termination From Constituting
                a Breach of a Contract or Valid Business Expectancy................................................18

        C.      Mr. Metz Has Not Stated a Claim for Tortious Interference Because He Has
                Not Shown That BAE Intentionally Procured a Breach of a Contract or Valid
                Business Expectancy ...................................................................................................18

III.    THE COURT SHOULD DISMISS MR. METZ'S CLAIM FOR BREACH OF THE
        IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (COUNT 4)...............20

        A.      Mr. Metz Has Not Alleged That BAE took Steps to Prevent Him from
                Receiving Benefits Owed to Him Under the Waiver and Release Agreement..........20

        B.      Mr. Metz Has Not Alleged That BAE Acted in Bad Faith .......................................22

IV.     CONCLUSION ................................................................................................................23

## I.   <u>INTRODUCTION</u>

Confronted with unambiguous black-letter law demonstrating the legal insufficiency of his claims, Plaintiff Stephen Metz attempts to distract the Court from BAE's Motion to Dismiss the Amended Complaint by pointing to a laundry list of extraneous and inapplicable authority. The Court should not be misled by this tactic.  Upon inspection, it is evident that Mr. Metz's Opposition does not actually address the arguments raised in BAE's Motion.  Though Mr. Metz attempts to divert the Court's attention by citing to a library of immaterial case law, he cites to no case rebutting the core arguments presented by BAE.  Mr. Metz's Amended Complaint should be dismissed for four reasons.[1]

<u>First</u>, D.C. law plainly holds that at-will employment—*i.e.*, the employment relationship between Mr. Metz and Alion Science & Technology Corporation ("ALION")—cannot support a claim for either tortious interference with contractual relations or tortious interference with prospective economic advantage (Counts 2 and 3) because it does not constitute a "contract" or a "valid business expectancy" for the purpose of either claim.  The issue of "third-party interference"—the primary focus of Mr. Metz's Opposition—is a red herring.  Under well-established DC law, at-will employment cannot support a tortious interference claim <u>regardless</u> of whether the alleged interferer was a third-party.  Moreover, even if BAE's third-party status was a meaningful issue, which it is not, at least three decisions applying D.C. law—including the decision that most-recently addressed the issue—have concluded that at-will employment cannot give rise to a tortious interference claim against a third-party.

---

[1] Because Mr. Metz has withdrawn Counts 1 and 5 of his Amended Complaint—*see* Docket No. 19 at p. 2, n. 1—this Reply will solely address Counts 2, 3, and 4.  In addition, given Mr. Metz's withdrawal of Counts 1 and 5, BAE should be awarded its costs for its motions to dismiss those counts.

Second, regardless of whether an at-will relationship can constitute a contract or valid business expectancy for the purpose of a tortious interference claim, Mr. Metz's at-will employment with ALION prevents his termination from constituting a breach of a contract or valid business expectancy.  Because at-will employees are not promised a fixed term of employment and may be terminated at any time, ALION did not commit a breach when it terminated Mr. Metz's employment.  Accordingly, Mr. Metz has not established a required element for his tortious interference claims.

Third, beyond failing to show that ALION breached a contract or valid business expectancy, Mr. Metz has not properly demonstrated that BAE intentionally procured a breach because his initial Complaint alleged that BAE acted in good faith when seeking to enforce his non-competition provision.  While Mr. Metz's Amended Complaint now contains the opposite allegation, the Court should disregard that portion of the Amended Complaint because the sudden change in allegations is nothing more than a blatant attempt to evade arguments raised in BAE's earlier Motion to Dismiss.  Because the initial Complaint failed to allege that BAE acted in bad faith—a necessary allegation for a showing that BAE intentionally procured a breach— Mr. Metz has not established a prima facie case of tortious interference.

Fourth, Mr. Metz cannot sustain his claim for breach of the implied covenant of good faith and fair dealing (Count 4) because he has not shown—nor alleged—that BAE either prevented him from receiving benefits owed to him under the Waiver and Release Agreement or acted in bad faith, both necessary elements for a claim for breach of the implied covenant.

For all of these reasons, and those discussed in greater detail below, this Court should dismiss Mr. Metz's Amended Complaint, in its entirety, with prejudice.

## II.   THE COURT SHOULD DISMISS MR. METZ'S CLAIMS FOR TORTIOUS INTERFERENCE (COUNTS 2 AND 3)

As set forth in BAE's Motion to Dismiss the Amended Complaint, the elements for tortious interference with contractual relations and tortious interference with prospective economic advantage are clearly defined under D.C. law.

To state a claim for tortious interference with contractual relations, a plaintiff must show: (1) the existence of a contract; (2) knowledge of the contract; (3) intentional procurement of a breach of the contract; and (4) damages resulting from the breach. *Riggs v. Home Builders Inst.*, 203 F. Supp. 2d 1, 22 (D.D.C. 2002).

To state a claim for tortious interference with prospective economic advantage, a plaintiff must show: (1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional procurement of a breach of the relationship or expectancy; and (4) resulting damages. *Id.* at 24.

In this case, the Court should dismiss Mr. Metz's tortious interference claims for three reasons.  First, he has failed to allege the existence of either a contract or valid business expectancy because his claims are predicated on his former "at-will" employment with ALION. Second, he has failed to allege a breach of a contract or valid business expectancy because his at-will employment with ALION could be terminated at any time, meaning that his termination did not constitute a breach.  Third, he has failed to allege that BAE intentionally procured a breach because his initial Complaint alleged that BAE acted in good faith when seeking to enforce Mr. Metz's non-competition provision and his Amended Complaint suddenly reversed that allegation solely to escape BAE's initial Motion to Dismiss.[2]

---

[2]   While BAE's Motion to Dismiss the Amended Complaint argued that Mr. Metz had not shown that BAE had knowledge of any alleged contract or business expectancy between himself and ALION—*see* Docket No. 13 at pp. 16 & 20—that argument was premised on the assumption that Mr. Metz was

A.      **D.C. Law Plainly Holds That At-Will Employment Cannot Support a Claim for Tortious Interference Because it Constitutes Neither a Contract Nor a Valid Business Expectancy**

While Mr. Metz's Opposition frames the "question presented" by BAE's Motion to Dismiss the Amended Complaint as "whether the District of Columbia permits a cause of action for third-party interference with existing or prospective at-will employment"—*see* Docket No. 19 at p. 2—this misplaced contention distorts and obscures the argument raised by BAE's Motion.  Under D.C. law, an at-will employment relationship cannot be the "contract" or "valid business expectancy" underlying a claim for tortious interference.  The question of whether the alleged interferer was a third-party is wholly unrelated to that threshold legal principle.  Here, because Mr. Metz offers his former at-will employment as the sole evidence that he had a contract or valid business expectancy with ALION, he cannot make a prima facie case of tortious interference.  As such, his claims should be dismissed.

1.      **The Court Should Look Beyond D.C. Law Only When D.C. Law is Silent on an Issue and, Even Then, It Should First Examine Analogous D.C. Decisions**

As an initial point, this Court should evaluate authority from non- D.C. sources <u>only</u> when D.C. law is silent on an issue.  *Hull v. Eaton Corp.*, 825 F. 2d 448, 453-54 (D.C. Cir. 1987) (holding that federal courts in the District of Columbia should look to Maryland law only "when there is no District of Columbia law on point"); *Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816, 824 (D.C. Cir. 1984) (holding that federal courts should rely upon general principles of law and rulings from other jurisdictions to predict how the D.C. Court of Appeals would decide an issue only when D.C. law "is silent" on an issue).  Where, as here, the

---

relying on something <u>other than</u> his at-will employment with ALION as the basis for his tortious interference claims.  Because Mr. Metz's Opposition solely relies upon his at-will employment with ALION in order to assert those claims, however, BAE will not discuss the knowledge argument in this Reply since Mr. Metz has failed to allege any other purported contract or business expectancy.

4

Court is able to rule on an issue by applying D.C. law, it should not look to other sources of law. *See*, *e.g.*, *Napoleon v. Heard*, 455 A.2d 901, 903 (D.C. 1983) (noting that Maryland law is persuasive when D.C. law is silent on an issue but declining to apply Maryland law because D.C. case law addressed the relevant issue in the case).

Moreover, even where D.C. law is silent on a particular issue, the Court should first turn to analogous D.C. decisions to predict how the D.C. Court of Appeals would rule.  *See Earle v. District of Columbia*, No. 11-7078, 2012 WL 6720357, at *8 (D.C. Cir. Dec. 28, 2012) (holding that "[b]ecause no D.C. Court of Appeals case is directly on point, we 'reason by analogy from D.C. cases' to predict how that court would decide the question") (quoting *Workman v. United Methodist Comm. on Relief*, 320 F.3d 259, 262 (D.C. Cir. 2003)); *see also Workman*, 320 F.3d at 262 (looking to other D.C. tort cases regarding liability for harm caused by criminal act of a third party because "[w]ithout more specific guidance, we are left to reason by analogy from D.C. cases").

     **2.**     **D.C. Law is Far From Silent on This Issue – Multiple Decisions Affirm That At-Will Employment Constitutes Neither a Contract Nor a Valid Business Expectancy**

Despite Mr. Metz's attempt to manufacture a "gap" or an "open question" in D.C. law, it is undisputed that an at-will employment relationship cannot support a tortious interference claim because that relationship constitutes neither a contract nor a valid business expectancy.  The foundation for this black-letter law is *Bible Way Church of our Lord Jesus Christ of the Apostolic Faith v. Beards*, 680 A.2d 419 (D.C. 1996), a D.C. Court of Appeals decision in which an at-will employee sued Bible Way Church for tortious interference with contractual relations. Confronted with those facts, the court highlighted the presumption that "where there is no a clear expression of an intent to enter into a contract for a fixed period . . . the parties have in mind . . . continuing employment, terminable at the will of either party" and held that the lack of a fixed-

5

term employment contract between the plaintiff and Bible Way Church meant that "there was no basis for . . . a tortious interference with contract claim." *Id.* at 432-33 (internal quotation marks and citations omitted).

The D.C. Court of Appeals expanded upon *Bible Way* in *McManus v. MCI Communications Corp.*, 748 A.2d 949 (D.C. 2000). In *McManus*, the court dismissed a claim for tortious interference with contractual relations by citing to *Bible Way* for the proposition that "an at-will employee . . . did not have a contractual employment relationship she could use as the basis for a suit for tortious interference with a contractual relationship." *Id.* at 957. The court then went further and held that the plaintiff's at-will status also prevented her from pursuing a claim for tortious interference with prospective economic advantage. *Id.* (noting that "[t]his Court has never held that an employee can maintain a suit for interference with prospective advantage where her expectancy was based on an at-will relationship, and we do not do so now").

This Court has applied – and reinforced – the *Bible Way* and *McManus* holdings on numerous occasions. *See*, *e.g.*, *IMARK Mktg. Serv., LLC v. Geoplast, S.p.A.*, 753 F. Supp. 2d 141, 164 (D.D.C. 2010) (dismissing tortious interference claim because employees' at-will status meant there was no contract with which to interfere); *Riggs*, 203 F. Supp. 2d at 22-23 (dismissing tortious interference claims that were based on at-will employment because plaintiff could not show that he had either a contract or valid business expectancy); *Dale v. Thomason*, 962 F. Supp. 181, 184 (D.D.C. 1997) (dismissing tortious interference claim based on at-will employment because "if there is no fixed or assured employment there is nothing tangible with which to interfere"). Given the D.C. authority holding that at-will employment does not

6

constitute either a contract or valid business expectancy, Mr. Metz is unable to sustain his tortious interference claims.

**3.    The Issue of "Third-Party Interference" is a Red Herring That Has No Bearing On Whether Mr. Metz Has Alleged the Existence of a Contract or Valid Business Expectancy Necessary For His Tortious Interference Claims**

Mr. Metz devotes the vast majority of his Opposition to attempting to divert the Court's attention from the black-letter D.C. law barring his tortious interference claims.  He does so by arguing that: (1) "the common law of the District does not address the specific question of third-party interference with at-will employment;" and (2) various non-D.C. legal sources would permit a "third-party interference" claim in this case.  (*See* Docket No. 19 at pp. 8-25).  This tactic is wholly unpersuasive because the issue of "third-party interference" has no bearing on the question of whether Mr. Metz has demonstrated the existence of a contract or valid business expectancy, a threshold requirement for his tortious interference claims.  Far from impacting that analysis, Mr. Metz's position presents a "distinction without a difference."  This is true for two reasons.

First, the D.C. Court of Appeals' holdings in *Bible Way* and *McManus—i.e.*, that at-will employment cannot support claims for tortious interference—are in no way premised upon whether the alleged interferer is a third-party.  Instead, as discussed earlier, the decisions are based upon the fundamental principle that at-will employment constitutes neither a contract nor a valid business expectancy.  *Bible Way Church*, 680 A.2d at 432-33; *McManus*, 748 A.2d at 957.

That interpretation of *Bible Way* and *McManus* was confirmed by this Court in *Riggs v. Home Builders Institute*, 203 F. Supp. 2d 1 (D.D.C. 2002).  In *Riggs*, the Court first observed that:

> [I]n the *Bible Way* case, <u>the highest court of the District of Columbia decided authoritatively that under an at-will arrangement the prerequisite does not exist</u>

<u>for the tort of intentional interference with employment relationship. . . . To put it
another way, if there is no fixed or assured employment there is nothing tangible
with which to interfere.</u>

*Riggs*, 203 F. Supp. 2d at 23 (quoting *Dale*, 962 F. Supp at 184) (emphasis added).  The Court

then turned to *McManus* and noted that:

> The D.C. Court of Appeals in *McManus* did not just stop after citing *Bible Way*
> and stating that <u>'it is clear that, as an at-will employee, [the plaintiff] did not have
> a contractual employment relationship she could use as the basis for a suit for
> tortuous [sic] interference with a contractual relationship.'</u>  <u>It went on to reject the
> plaintiff's similar argument there that her claim was nonetheless available because
> 'she had a long-term employment relationship and an expectancy of continuing
> employment relations with MCI.'</u>  <u>In so doing, the court explained that it 'never
> has held that an employee can maintain a suit for interference with prospective
> advantage where her expectancy was based on an at-will relationship, and we do</u>
> not do so now.'

*Id.* at 24 (internal citations omitted) (emphasis added).

As that language demonstrates, the relevant analysis does not turn on whether the alleged

interferer was a third-party.  Indeed, regardless of whether the defendants in *Bible Way* and

*McManus* were third parties, the D.C. Court of Appeals would have affirmed the dismissal of the

tortious interference claims because the plaintiffs' employment was at-will.[3]  Mr. Metz's

reasoning—*i.e.*, that a change in facts unrelated to a decision's holding makes the decision

---

[3]  Mr. Metz attempts to rely upon *Carr v. Brown*, 395 A.2d 79 (D.C. 1978), and its progeny to rebut
*McManus* and show that "third-party interference with at-will employment remains an open question in
the District."  (*See* Docket No. 19 at p. 10).  This attempt is unavailing.  First, *Carr* did not address the
question raised by *McManus*, *i.e.*, whether at-will employment can give rise to a claim for tortious
interference.  Instead, it concerned a <u>non-employment</u> related dispute between a real estate developer
and a property owner.  *Carr*, 395 A. 2d at 82.  As noted above, the issue of "third-party interference"
does not affect *McManus*'s holding that that employment at-will cannot support a tortious interference
claim.  *See Riggs*, 203 F. Supp. 2d at 22-23; *McManus*, 748 A.2d at 957.  Second, the language in
*McManus* forecloses the possibility that *Carr* stands for the proposition that at-will employment can
support a tortious interference claim.  Specifically, *McManus*, which was decided 22 years after *Carr*,
stated that the D.C. Court of Appeals had "<u>never [which would include in *Carr*]</u> held that an employee
can maintain a suit for interference with prospective advantage where her expectancy was based on an
at-will relationship."  748 A.2d at 957 (emphasis added).  Accordingly, this Court should follow the
plain language of *McManus* – language that indisputably forecloses Mr. Metz's tortious interference
claims.

inapplicable—is untenable.  As such, this Court should reject Mr. Metz's attempt to manufacture

a "gap" in the case law where none exists.  In this case, D.C. law unmistakably provides that an

at-will employment relationship cannot support a claim for tortious interference regardless of

whether the alleged interferer was a third-party because that relationship does not constitute

either a contract or valid business expectancy.  *See Riggs* 203 F. Supp. 2d at 22-24; *McManus*,

748 A.2d at 957; *Bible Way*, 680 A.2d at 432-33.

    Second, even assuming, *arguendo*, that the issue of "third-party interference" was a

relevant one—which it is not—at least three decisions applying D.C. law—including this Court's

most recent decision addressing the issue—have explicitly found that at-will employment cannot

give rise to a tortious interference claim against a third-party.[4]  The first decision to consider the

issue was *Dale v. Thomason*, 962 F. Supp. 181 (D.D.C. 1997), a case involving a tortious

interference claim brought by a number of at-will employees against a third-party company that

allegedly attempted to have them fired in order to steal their employer's business.  *Id.* at 182.

Faced with those facts, this Court cited to *Bible Way* and concluded that the plaintiffs' claim had

to be dismissed because "under an at-will arrangement the prerequisite [of a contract] does not

exist for the tort of interference with employment relation[s]."  *Id.*at 184.  In reaching that

conclusion, the *Dale* Court unequivocally found that "[a] third party who interferes with such a

tenuous relationship [*i.e.*, at-will employment] is not liable to the employee since no wrongful

breach of contract can result from his interference."  *Id.*

    The issue of "third-party interference with at-will employment" was next addressed by

the District of Maryland in a case involving the application of D.C. law.  *See Kwang Dong*

---

[4]  Mr. Metz's Opposition asserts that only one case cited in BAE' Motion to Dismiss "dealt with the issue
of third-party interference with at-will employment"—*see* Docket No. 19 at p. 10—but that assertion is
incorrect.

*Pharm. Co. v. Han*, 205 F. Supp. 2d 489 (D. Md. 2002).  In that case, a Georgetown University professor alleged that a third-party drug company tortiously interfered with his employment by falsely accusing him of taking research money.  *Id.*at 493.  For procedural reasons not germane to the instant case, the *Kwang Dong* court analyzed the plaintiff's tortious interference claims under both D.C. and Maryland law.  *Id.* at 494.  When applying D.C. law, the court dismissed the claims.  *Id.* at 496.  In doing so, it cited to *Bible Way* and *McManus* and found that, under D.C. law, "an at-will employee does not have a contractual employment relationship he could use as the basis for a suit for tortious interference. . . ."  *Id.* (internal brackets and quotation marks omitted).[5]

The final decision to consider the intersection between at-will employment and "third-party interference" under D.C. law is *IMARK Marketing Services, LLC v. Geoplast, S.p.A.*, 753 F. Supp. 2d 141 (D.D.C. 2010), a case in which IMARK, a marketing company, brought a tortious interference claim against one of its clients for attempting to hire away certain "key personnel."  *Id.* at 147.  In other words, the client—a third-party—was allegedly tortiously interfering with the relationship between IMARK and IMARK's employees.  Given those facts, this Court cited to both *Bible Way* and *McManus*, and dismissed the tortious interference claim because the at-will relationship between IMARK and its employees meant that "the Court cannot reasonably infer . . . that a contract existed . . . ."  *Id.* at 164.

While Mr. Metz cites to two cases for the proposition that "this Court has shown receptivity to recognizing" a claim for "third-party interference with at-will employment"—*see*

---

[5]  The *Kwang Dong* court then analyzed the plaintiffs' tortious interference claims under Maryland law, and found that the claims would survive because "[i]n Maryland, a broader right to interfere with economic relations exists where . . . a contract terminable at will is involved."  205 F. Supp. 2d at 496 (internal citations, brackets, and quotation marks omitted).  As will be discussed below—*see* discussion, *infra*, at p. 14—this clear distinction between D.C. and Maryland law demonstrates why this Court should not rely upon Maryland law when determining whether Mr. Metz may maintain his tortious interference claims.

Docket No. 19 at pp. 10-13—the cases were not actually decided in the context of "third-party interference" claims.  *See Zelaya v. Unicco Serv. Co.*, 587 F. Supp. 2d 277, 288 (D.D.C. 2008) (dismissing tortious interference claim filed by at-will employee against her former employer); *Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 72-73 (D.D.C. 2005) (same).  Moreover, while the decisions decline to explicitly find that D.C. law disallowed claims for third-party interference with at-will employment given the facts at hand, they far from endorse such a position.  Instead, the remarks concerning "third-party interference," which are made in dicta, suggest that the Court did not want to engage the issue when it did not need to do so.  *See*, *e.g.*, *Zelaya* 587 F. Supp. 2d at 287 (noting that the Court did "not believe plaintiff's allegations in this case provide an occasion to make the judicial leap necessary to hold that D.C. law permits a prospective at-will employee to recover against a third party unrelated to the potential employer based on a theory of intentional interference with prospective contractual relations").

Regardless, as discussed in detail above—*see* discussion, *supra*, at pp. 7-9—a comprehensive reading of *Bible Way* and *McManus* reveals that their holdings are not at all premised on the question of "third-party interference."  Rather, under those decisions, a plaintiff may not base a tortious interference claim on an at-will employment relationship regardless of whether the alleged interferer was a third-party.  *Riggs,* 203 F. Supp. 2d at 22-24; *McManus*, 748 A.2d at 957; *Bible Way*, 680 A.2d at 432-33.  That point is underscored by the fact that the only cases in which this Court has squarely confronted the issue of third party-interference with at-will employment have expressly found that D.C. law does not permit at-will employment to underlie a tortious interference claim against a third-party.  *See IMARK Marketing*, 753 F. Supp. 2d at 164; *Kwang Dong*, 205 F. Supp. 2d at 496; *Dale*, 962 F. Supp. at 184.  That one of those cases (*IMARK Marketing*) was decided several years after the cases cited in Mr. Metz's

11

Opposition further reinforces the conclusion that this Court has already interpreted D.C. law as barring the type of tortious interference claims now brought by Mr. Metz.

    **4.**    **The D.C. Authority Cited by Mr. Metz Does Not Address the Argument That At-Will Employment Cannot Support a Claim for Tortious Interference Because it Constitutes Neither a Contract Nor a Valid Business Expectancy**

Likely realizing that D.C. law forecloses his tortious interference claims, Mr. Metz cites a single opinion for the proposition that "this Court . . . has already recognized a cause of action for third-party interference with at-will employment when the improper mean of threatening civil litigation is alleged." (Docket No. 19 at p. 23). Once again, Mr. Metz's argument attempts to divert the Court's attention from the central issue of whether an at-will employment relationship can support a claim for tortious interference. To begin with, contrary to Mr. Metz's representation, the one case cited by his Opposition, *Bowhead Information Technology Services, LLC v. Catapult Technology, LTD*, 377 F. Supp. 2d 166 (D.D.C. 2005), does not discuss that central issue. While *Bowhead* examines whether the threat of colorable litigation can give rise to a tortious interference claim—*id.* at 175-76— it does not address the D.C. principle that at-will employment constitutes neither a contract nor a valid business expectancy for the purpose of such a claim.[6] As a result, the Court should look to the previously discussed authority finding that at-will employment cannot support tortious interference claims. *See, e.g.*, *IMARK Marketing*, 753 F. Supp. 2d at 164; *Riggs*, 203 F. Supp. at 22-24; *Kwang Dong*, 205 F. Supp. 2d at 496; *Dale*, 962 F. Supp. at 184; *McManus*, 748 A.2d at 957; *Bible Way Church*, 680 A.2d at 432-33.

---

[6] In fact, the phrase "at-will" does not appear once in the *Bowhead* opinion.

**5.      The Maryland Authority Cited by Mr. Metz is a Poor Substitute for D.C. Law Because it is Less Factually Analogous and Applies a Different Framework**

In an attempt to divert attention away from his inability to bring a tortious interference claim under controlling D.C. law, Mr. Metz asserts that the common law of Maryland would permit a cause of action for wrongful interference with an at-will contract.  (Docket No. 19 at pp. 14-19).  As set forth below, the Maryland cases cited are largely inapplicable, however, and shed no light on the facts presently before the Court.

With one exception, the Maryland cases cited by Mr. Metz's Opposition are not even in the employment context and do not discuss tortious interference with at-will employment.  *See Macklin v. Robert Logan Assocs.*, 639 A.2d 112, 119-22 (Md. 1994) (analyzing tortious interference in the context of defendant's alleged improper conduct in persuading a landlord not to renew plaintiff corporation's lease); *Goldman v. Harford Road Bldg. Ass'n*, 133 A. 843, 845 (Md. 1926) (dismissing claim for tortious interference with plaintiff's intention to purchase land); *Knickerbocker Ice Co. v. Gardiner Dairy Co.*, 69 A. 405, 409-10 (Md. 1908) (analyzing whether ice manufacturer tortiously interfered with the deliveries of third-party ice suppliers to dairy company); *D.J. Diamond Imports, LLC v. Silverman Consultants, LLC*, No. 11-2027, 2012 U.S. Dist. LEXIS 5755, at *16-19 (D. Md. Jan. 18, 2012) (alleging tortious interference based on threats of violence to induce breach of contract allowing plaintiff to use space in a third-party's store).[7]  The dearth of analogous Maryland authority demonstrates that Maryland law is a poor stand-in for D.C. law on this issue, especially where D.C. courts have addressed claims of tortious interference in the employment at-will context.

---

[7] The sole Maryland case involving the employment context—*Lucke v. Clothing Cutters & Trimmers' Assembly*, 26 A. 505 (Md. 1893)—is 120 years old and was decided before Maryland developed its current framework for tortious interference claims.  *See Natural Design, Inc. v. Rouse Co.*, 485 A.2d 663, 675 (Md. 1984) (citing to *Willner v. Silverman*, 71 A. 962 (1909) as announcement of elements of the tort under Maryland law).

Moreover, the laws of Maryland and D.C. law diverge significantly concerning claims for tortious interference by an at-will employee. In *Kwang Dong Pharmaceutical*, the District of Maryland compared D.C. and Maryland law and concluded that, although Maryland law would allow a claim for tortious interference with an at-will employment relationship, such a claim failed as a matter of law when D.C. law was applied. 205 F. Supp. 2d at 495-97 (finding that plaintiff was "unsuccessful if D.C. law is applied" but that "[i]n Maryland, '[a] broader right to interfere with economic relations exists . . . where a contract terminable at will is involved'").

It defies reason for this Court to look to Maryland law as a substitute where D.C. law is on-point and mandates a different outcome. Put another way, this Court need look only to D.C. law, which dictates dismissal of this case.

### 6.    The Additional Authority Cited by Mr. Metz is Similarly Inapposite and Extraneous to the Analysis of Tortious Interference Under D.C. Law

In a further attempt to keep the spotlight off of D.C. law, Mr. Metz points to a host of non-binding authority, including the Restatement (Second) of Torts, dicta contained in miscellaneous Supreme Court decisions, and the laws of other jurisdictions. The additional authority cited by Mr. Metz does not alter the fact that he cannot bring a claim under D.C. law. By way of reminder, this Court should look beyond D.C. law only where D.C. law is silent on an issue. Moreover, the Court should turn to analogous D.C. decisions prior to examining other legal sources. *See* discussion, *supra*, at pp. 4-5. Because D.C. law has foreclosed Mr. Metz's claims, his discussion of the Restatement (Second) of Torts, Supreme Court jurisprudence, and the laws of other jurisdictions has no bearing here. Nonetheless, out of an abundance of caution, this Reply will briefly address each of those unavailing arguments.

First, contrary to Mr. Metz's assertions, Maryland cases referencing provisions of the Restatement (Second) of Torts have no application here. Those cases focus almost exclusively

14

on commercial contracts and do not discuss at-will employment relationships. *See Alexander &*
*Alexander Inc. v. B. Dixon Evander & Assocs., Inc.*, 650 A.2d 260, 268 (Md. 1994) (claiming
tortious interference with right to receive commission under insurance brokerage contract);
*Macklin v. Robert Logan Assocs.*, 639 A.2d 112, 117-18 (Md. 1994) (alleging tortious
interference with corporation's lease); *K & K Mgmt., Inc. v. Lee*, 557 A.2d 965, 970 (Md. 1989)
(claiming tortious interference in motel operators' exercise of option to terminate restaurant
owners' lease with the motel); *Sharrow v. State Farm Mut. Auto. Ins. Co.*, 511 A.2d 492, 495-96
(Md. 1986) (bringing claim against insurance company for tortiously interfering with attorney's
contingent fee contract by settling case with attorney's client); *Natural Design, Inc. v. Rouse Co.*,
485 A.2d 663, 673-74 (Md. 1984) (asserting that defendants tortiously interfered with shop
owners' lease and business relationship with manufacturers); *Winternitz v. Summit Hill Joint*
*Venture*, 532 A.2d 1089, 1093 (Md. Ct. Spec. App. 1987) (asserting claim for tortious
interference with tenant's lease through defendant's refusal to permit plaintiff to assign the
lease). As these cases do not even purport to address tortious interference in the employment
context—much less the employment at-will context—references to the Restatement contained
within the cases have no bearing on Mr. Metz's claims.

Similarly, Mr. Metz's assertion that D.C. courts have adopted the same provisions of the
Restatement is no more than another diversionary tactic. Upon review, nearly all of the
decisions cited by Mr. Metz do not consider the Restatement in the context of at-will
employment. *See Nat'l R.R. Passenger Corp. v. Veolia Transp. Servs., Inc.*, 791 F. Supp. 2d 33,
54-61 (D.D.C. 2011) (allegation of competitor's interference with bidding for contract award);
*Bowhead*, 377 F. Supp. 2d at 174-76 (claim for interference with obtaining sole source contract);
*Mercer Mgmt. Consulting, Inc. v. Wilde*, 920 F. Supp. 219, 239 (D.D.C. 1996) (alleged tortious

interference claim with client relationships); *Int'l City Mgmt. Ass'n Ret. Corp. v. Watkins*, 726 F.

Supp. 1, 5-7 (D.D.C. 1989) (allegation of tortious interference with relationship with customer

base); *Modis, Inc. v. Infotran Sys., Inc.*, No. 09-1051 (RWR), 2012 U.S. Dist. LEXIS 140878,

*10-15 (D.D.C. Sept. 28, 2012) (claim for interference with attempt to obtain contract staff

positions); *Jane Lyons Adver., Inc. v. Cook*, No. 97-01069 (RCL), 1998 U.S. Dist. LEXIS 14708,

at *24-26 (D.D.C. Mar. 31, 1998) (alleged interference with advertising contract); *Onyeoziri v.

Spivok*, 44 A.3d 279, 286-91 (D.C. 2012) (defining improper conduct in context of interference

with contract to sell rental property); *Paul v. Howard Univ.*, 754 A.2d 297, 309-10 (D.C. 2000)

(claim for tortious interference with right to tenure and application for grant proposals on behalf

of university); *DeKine v. District of Columbia*, 422 A.2d 981, 987-88 (D.C. 1980) (claim for

tortious interference with plaintiff's operation of horse-drawn carriage business).[8]  As these cases

occurred in entirely different factual contexts, their references to the Restatement simply do not

aid the Court's analysis of the whether at-will employees can sustain a claim for tortious

interference.

Likewise, the two Supreme Court cases cited by Mr. Metz are unpersuasive.  As Mr.

Metz concedes, neither decision involved claims for third-party interference with at-will

employment. *See Haddle v. Garrison*, 525 U.S. 121, 122 (1998) (analyzing claim arising under

42 U.S.C. § 1985 conspiracy statute); *Truax v. Raich*, 239 U.S. 33, 36-38 (1915) (addressing

Fourteenth Amendment equal protection challenge to state law).  While the Court noted, in dicta,

that certain states have recognized unjustified interference with employment at-will as actionable

---

[8]  Although *Sorrells v. Garfinckel's, Brooks Brothers, Miller & Rhoads, Inc.*, 565 A.2d 285 (D.C. 1989)
did consider a claim in the employment context, the decision did not address whether at-will employees
could maintain claims for tortious interference.  Rather *Sorrells* "involved only the question [of]
whether a supervisory employee may interfere with a subordinate's employment without a proper
purpose."  *Riggs*, 203 F. Supp. 2d at 24 (distinguishing *Sorrells*); *Dale*, 962 F. Supp. at,183 (same).
Moreover, *Sorrells* was decided long before the D.C. Court of Appeals rulings in *Bible Way* and
*McManus*.

in some situations, the Court was not addressing D.C. law and did not hold that there was a universal right to bring a claim for tortious interference with at-will employment.

Finally, Mr. Metz's citation to a litany of authority from other jurisdictions has no bearing on this Court's decision.  Even assuming, *arguendo*, that Mr. Metz is correct in his assertions concerning the laws of other states, that simply means that D.C. has adopted a different approach concerning claims for tortious interference with at-will employment.  *See, e.g. Favrot v. Favrot*, 68 So. 3d 1099, 1111 (La. Ct. App. 2011) (noting that, like D.C., Louisiana law "does not recognize a cause of action for tortious interference with […] at-will employment."). That fact alone is no reason to depart from established D.C. law.  *See, e.g.*, *Harrison v. Howard Univ.*, 846 F. Supp. 1, 2 (D.D.C. 1993), *aff'd*, 48 F.3d 562 (D.C. Cir. 1995) (applying "admittedly the minority rule" on abuse of process because the D.C. Court of Appeals had committed itself to the minority rule); *Sykes v. United States*, 264 A.2d 894, 895 (D.C. 1970) (reaffirming adherence to the minority rule that an attorney's unexcused absence is contempt committed in the presence of the court)*; see also Pro-Football, Inc. v. Hartford Accident & Indem. Co.*, No. 97-1480, 1998 WL 34103109, at *4 (U.S. Mar. 20, 1998) (noting that "[plaintiff] simply asks this Court to conform D.C. law to a majority rule on the relation back of counterclaims.  There is no issue of federal law presented here and this Court does not conform the substantive laws of the individual states or D.C. to some preferred majority or minority position, absent a compelling constitutional concern").  In this case, the relevant authority is D.C. law, which does not permit a claim for tortious interference with at-will employment. Accordingly, the Court should dismiss Counts 2 and 3 of the Amended Complaint.

**B.** **Mr. Metz Has Not Stated a Claim for Tortious Interference Because His At-Will Employment With ALION Prevents His Termination From Constituting a Breach of a Contract or Valid Business Expectancy**

Even if Mr. Metz were able to demonstrate that an at-will relationship can constitute a contract or valid business expectancy—which he cannot—his Opposition still fails to address BAE's argument that his "at-will employment relationship with ALION means that he cannot demonstrate a contractual breach sufficient to state a claim for tortious interference." (Docket No. 13-1 at p. 15, n. 8).

As this Court has expressly found, "[t]ermination of employment . . . does not breach an at-will employment contract, because by its very terms the agreement contemplates that either party may end the employment relationship, with or without cause." *Daisley*, 372 F. Supp. 2d at 67; *see also Sheppard v. Dickstein, Shapiro, Morin & Oshinsky et al.*, 59 F. Supp. 2d 27, 34 (D.D.C. 1999) (finding that an at-will employee could not sustain a claim for tortious interference with prospective economic advantage because he had not "presented evidence of a specific, future relationship with [his employer]"); *Dale*, 962 F. Supp. at 184 (finding that "[a] third party who interferes with [an at-will] relationship is not liable to the employee since no wrongful breach of contract can result from his interference").

In this case, Mr. Metz's at-will employment with ALION means that his termination did not constitute a breach of contract or valid business expectancy. Consequently, separate and apart from this Reply's earlier arguments, he is unable to make a prima facie case of tortious interference, and the Court should dismiss Counts 2 and 3 of the Amended Complaint.

**C.** **Mr. Metz Has Not Stated a Claim for Tortious Interference Because He Has Not Shown That BAE Intentionally Procured a Breach of a Contract or Valid Business Expectancy**

Finally, Counts 2 and 3 of the Amended Complaint should be dismissed because Mr. Metz has not shown that BAE intentionally procured a breach of a contract or valid business

expectancy.  As set forth in BAE's Motion to Dismiss the Amended Complaint, a plaintiff may

base a tortious interference claim on a threatened suit "[o]nly in the most exceptional of

circumstances – where the defendant's sole motivation in threatening to bring a colorable suit

was to harass, and the defendant ha[s] no interest in bringing his claim to a definite

adjudication."  *Bowhead*, 377 F. Supp. 2d at 176.

      Here, while the Amended Complaint alleges that BAE engaged in misrepresentation and

acted in bad faith because it "knew there was no basis or merit to the lawsuit it was threatening

to file" and "threatened to institute such a suit . . . for the sole purpose of harassing [Mr.

Metz]"—Docket No. 9 at ¶¶ 68-69—the initial Complaint contains the opposite allegation.  Far

from alleging bad faith or misrepresentation, the initial Complaint states that BAE's actions

stemmed from its "belief that the 'non-competition' restrictions . . . are valid and enforceable."

(Docket No. 1 at ¶ 52).  This sudden change in allegations is nothing more than an attempt to

evade BAE's initial Motion to Dismiss, which demonstrated that the Complaint's tortious

interference claim must be dismissed because it did not allege that BAE had engaged in

"egregious conduct" such as threatening to bring lawsuit in bad faith.  (*See* Docket No. 5-1 at pp.

14-15).

      Under the uncontested authority cited in BAE's Motion to Dismiss the Amended

Complaint, this Court should accept the facts in the initial Complaint as true because: (1) the

Amended Complaint alleges facts that are the opposite of what was pled in the initial Complaint;

and (2) that factual change is due to Mr. Metz's attempt to plead his way around arguments

raised in BAE's earlier Motion to Dismiss.  *See*, *e.g.*, *Bradley v. Chiron Corp.*, 136 F.3d 1317,

1324-25 (Fed. Cir. 1998) (finding that new pleadings exceeded permissible adjustment of factual

allegations because the facts were materially changed, not adequately explained, and appeared to

be an attempt to conform the facts to the requirements of a cause of action); *Wallace v. N.Y. City Dep't of Corr.*, No. 95 CV 4404, 1996 WL 586797, at *1-2 (E.D.N.Y. Oct. 9, 1996) (accepting as true facts in initial complaint where facts in amended complaint directly contradicted facts in initial complaint in attempt to respond to motion to dismiss).

While, as Mr. Metz's Opposition points-out, "there is no rule which does away with a plaintiff's amendment right simply because his original pleading was not pled as artfully as it could have been"—Docket No. 19 at p. 25, n. 15—the above-cited (and unchallenged) authority demonstrates that the Court can and should accept an initial complaint's allegations in egregious situations such as this.  Far from eliminating a plaintiff's ability to amend a complaint in response to a motion to dismiss based on the complaint's "inartful" pleading, the rule properly prohibits a plaintiff from reversing a complaint's allegations in order to "game the system" and temporarily resuscitate claims that a motion to dismiss has already shown to be facially deficient.

Given the initial Complaint's position that BAE's actions stemmed from its genuine belief that the non-competition provision was valid and enforceable, Mr. Metz has not shown that BAE intentionally procured a breach of a contract or valid business expectancy, and the Court should dismiss his tortious interference claims.

III.   **THE COURT SHOULD DISMISS MR. METZ'S CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (COUNT 4)**

    A.   **Mr. Metz Has Not Alleged That BAE took Steps to Prevent Him from Receiving Benefits Owed to Him Under the Waiver and Release Agreement**

Mr. Metz's claim for breach of the implied covenant of good faith and fair dealing should be dismissed because he has not shown—nor alleged—that BAE took steps to prevent him from receiving benefits owed to him under the Waiver and Release Agreement (*i.e.*, his only contract with BAE).

Under well-established D.C. law, the purpose of the implied covenant is to prevent "either party [to a contract] from doing anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Mero v. City Segway Tours of Wash. D.C., LLC*, 826 F. Supp. 2d 100, 106 (D.D.C. 2011) (internal quotations and citations omitted).  Thus, contrary to Mr. Metz's position, a claim for breach of the implied covenant must be dismissed if a plaintiff has not "allege[d] facts to show that defendant has taken steps, or refused to take steps, which ultimately had the effect of destroying or injuring the right to receive the fruits of the contract." *Id.* at 106 (citing *Nugent v. Unum Life Ins. Co. of Am.*, 752 F. Supp. 2d 46, 56 (D.D.C. 2010)); *see also Cambridge Holdings Grp., Inc. v. Fed. Ins. Co.*, 357 F. Supp. 2d 89, 96 (D.D.C. 2004) (dismissing claim because, *inter alia*, plaintiff did not allege any facts showing that its rights under the agreement were injured or destroyed); *UBS AG v. Cournot Fin. Prods., LLC*, No. 10-0494 (GBD), 2010 WL 3001884, at *2 (S.D.N.Y. July 26, 2010) (dismissing claim where alleged breach did not impact any bargained-for benefits); *Kuroda v. SPJS Holdings, LLC*, 971 A.2d 872, 888-89 (Del. Ch. 2009) (dismissing claim for breach of implied covenant where plaintiff did not allege that defendants impaired plaintiff from receiving fruits of the contract).[9]

In this case, the sole benefit provided to Mr. Metz under the Waiver and Release Agreement is his receipt of "supplemental severance pay and benefits." (*See* Docket No. 9,

---

[9]  While Mr. Metz has attempted to distinguish this authority, his attempt falls short.  Each of these cases demonstrates that a claim for breach of the implied covenant of good faith and fair dealing fails where the plaintiff has not alleged that his benefits under the contract were impaired or destroyed by defendant's conduct.  *See*, *e.g.*, *Cambridge Holdings Grp., Inc.*, 357 F. Supp. 2d at 96 (finding that "the plaintiff cannot state a claim for breach of good faith and fair dealing against [defendant] because the plaintiff has not alleged a set of facts under which a denial of benefits under the . . . agreement would injure or destroy its rights under that agreement") (emphasis added).  Further, black letter D.C. law requires Mr. Metz to "allege facts to show that [BAE] has taken steps . . . which ultimately had the effect of destroying or injuring the right to receive the fruits of the contract"—something he has not done—in order to survive BAE's Motion to Dismiss the Amended Complaint.  *See Mero*, 826 F. Supp. 2d at 106 (internal quotations and citations omitted).

Exhibit 1 at ¶ 3(b)).  The Agreement's non-competition provision is not a benefit provided to Metz.  Rather, it is a benefit provided from Mr. Metz to BAE in exchange for his supplemental severance pay and benefits.  Indeed, Mr. Metz concedes this point when stating that it is <u>his obligation</u> under the Agreement to "refrain from . . . seek[ing] employment with a competitor." (Docket No. 19 at p. 26).  Further, contrary to the argument raised in Mr. Metz's Opposition— *see* Docket No. 19 at p. 26—the right to seek future employment is not an "implicit fruit" provided to him under the Agreement.  The contract in this case is simple: Mr. Metz accepted supplemental severance benefits in exchange for a promise to comply with the Agreement's terms, including the non-competition provision.  The Court should not allow Mr. Metz to re-write—and dramatically expand—the Agreement in order to assert a claim for breach of the implied covenant.

Because the ability to work for ALION, or any other future employer, is not a benefit provided to Mr. Metz under the Agreement, BAE's alleged interference cannot give rise to a claim for breach of the implied covenant of good faith and fair dealing.  *See Cambridge Holdings Grp., Inc.*, 357 F. Supp. 2d at 96 (finding that "<u>the plaintiff cannot state a claim for breach of good faith and fair dealing</u> against [defendant] <u>because the plaintiff has not alleged a set of facts under which a denial of benefits under the . . . agreement would injure or destroy *its rights* under that agreement</u>") (emphasis added).  Accordingly, this Court should dismiss Count 4 of the Amended Complaint.

**B.**    <u>**Mr. Metz Has Not Alleged That BAE Acted in Bad Faith**</u>

Even if Mr. Metz were able to show that BAE took steps to prevent him from receiving so-called "implicit fruits" allegedly owed to him under the Waiver and Release Agreement, this Court should still dismiss his claim for breach of the implied covenant because he has failed to properly allege that BAE acted in bad faith.  While, as Mr. Metz's Opposition argues, "the

*Amended Complaint* is replete with allegations of BAE's bad faith"—Docket No. 19 at p. 27 (emphasis added)—the initial Complaint contained the precise opposite allegation; *i.e.*, the initial Complaint alleged that BAE's threatened suit was based on its genuine "belief that the 'non-competition' restrictions . . . are valid and enforceable."  (Docket No. 1 at ¶ 52).

As discussed in detail above, this Court should disregard the Amended Complaint's allegations of bad faith and accept the facts pled in the initial Complaint as true because the Amended Complaint contains allegations that are the opposite of those in the initial Complaint and the self-serving factual changes are nothing more than an attempt to circumvent arguments raised in BAE's earlier motion to dismiss and conform Mr. Metz's allegations to the elements of the cause of action.  *See* discussion and cases cited, *supra*, at pp. 19-20.  In light of the initial Complaint's allegation that BAE acted in good faith when seeking to enforce the non-competition provision, Mr. Metz's claim for breach of the implied covenant cannot be sustained, and the Court should dismiss Count 4 of the Amended Complaint.

## IV.     <u>CONCLUSION</u>

For the reasons set forth above, BAE respectfully requests that this Court dismiss Mr. Metz's Amended Complaint, in its entirety, with prejudice, and further requests that this Court award BAE its costs for the defense of this litigation, including its costs for its motions to dismiss Counts 1 and 5 of the Complaint and Amended Complaint.[10]

---

[10] Mr. Metz withdrew Counts 1 and 5 in a footnote to his Opposition—*see* Docket No. 19 at p. 2, n. 1— only after BAE expended significant time and effort in opposing the claims, including opposing Count 1 in both its initial Motion to Dismiss and its Motion to Dismiss the Amended Complaint.

Dated:  February 8, 2013                    Respectfully submitted,

                                            /s/ Lincoln O. Bisbee_____
                                            Robert J. Smith, Bar No. 162784
                                            rsmith@morganlewis.com
                                            Joyce E. Taber, Bar No. 478681
                                            jtaber@morganlewis.com
                                            Lincoln O. Bisbee, admitted *pro hac vice*
                                            lbisbee@morganlewis.com
                                            MORGAN, LEWIS & BOCKIUS LLP
                                            1111 Pennsylvania Avenue, NW
                                            Washington, DC  20004
                                            Telephone: 202.739.3000
                                            Facsimile: 202.739.3001

## <u>CERTIFICATE OF SERVICE</u>

Lincoln O. Bisbee, an attorney, hereby certifies that on February 8, 2013 he caused true and correct copies of the foregoing to be served via the Court's ECF system on all counsel of record.

/s/ Lincoln O. Bisbee
Lincoln O. Bisbee, admitted *pro hac vice*
lbisbee@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC  20004
Telephone: 202.739.3000
Facsimile: 202.739.3001
