UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| STEPHEN D. METZ, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 12-1694 (GK) |
| | : | |
| BAE SYSTEMS TECHNOLOGY | : | |
| SOLUTIONS & SERVICES, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |

## MEMORANDUM OPINION

Plaintiff Stephen D. Metz ("Plaintiff" or "Metz") brings this diversity action against Defendant BAE Systems Technology Solutions & Services, Inc. ("Defendant" or "BAE") alleging violations of the common law of the District of Columbia.

This matter is presently before the Court on Defendant's Motion to Dismiss Plaintiff's Amended Complaint [Dkt. No. 13]. Upon consideration of the Motion, Opposition [Dkt. No. 19], Reply [Dkt. No. 20], and the entire record herein, and for the reasons stated below, Defendant's Motion to Dismiss is **granted**.

## I.   BACKGROUND[1]

BAE provides management and operational support to the United States Armed Forces, Department of Defense, and other federal agencies. Am. Compl. ¶ 7. BAE is incorporated and has its principal place of business in Maryland. Id. ¶¶ 5-6. Metz, a Virginia resident, was employed at BAE as Vice President of Maritime Programs from August 13, 2007, to February 3, 2012. Id. ¶¶ 3, 8, 52.

On February 3, 2012, Metz was laid off. Id. ¶ 52. Metz signed a Waiver and Release Agreement with BAE that included a Non-Compete Provision barring Metz for one year from working for BAE's competitors. Id. ¶¶ 20, 52. That Provision was effective immediately and expired in February of 2013. Id. ¶ 20.

Metz then applied for the position of Senior Vice President and Group Manager of the Acquisition Program Management Group at ALION, a company that had worked with BAE on several projects in the past. Id. ¶¶ 52-53, 58-59. ALION selected Metz to fill the position, and he began working there on May 14, 2012, three

---

[1] For purposes of ruling on a motion to dismiss, the factual allegations of the complaint must be presumed to be true and liberally construed in favor of the plaintiff. Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc., 525 F.3d 8, 15 (D.C. Cir. 2008); Shear v. Nat'l Rifle Ass'n of Am., 606 F.2d 1251, 1253 (D.C. Cir. 1979). Therefore, the facts set forth herein are taken from the Amended Complaint ("Am. Compl.") [Dkt. No. 9].

months after he left BAE. Id. ¶ 54. Metz's employment with ALION was "on an at will basis." Id. ¶ 55.

Shortly after being hired, Metz informed BAE employees that he was now working for ALION. Id. ¶ 57. In late May 2012, BAE contacted Metz and ALION and "demand[ed] that ALION immediately fire Plaintiff or that Plaintiff immediately resign" and threatened legal action if neither of these events occurred. Id. ¶ 63, 67. The Amended Complaint alleges when Metz went to work for ALION, ALION and BAE had been teammates and partners on a number of projects -- and therefore, were not competitors and would not be competitors during the duration of Metz's one year non-competition agreement with BAE.    On June 15, 2012, as a direct consequence of BAE's actions, ALION terminated Metz. Id. ¶ 74.

On October 16, 2012, Metz filed a complaint in this Court. On November 21, 2012, he filed an Amended Complaint.[2] On December 21, 2012, BAE filed a Motion to Dismiss Plaintiff's Amended Complaint ("Motion") [Dkt. No. 13]. On January 25, 2013, Metz filed an Opposition to Defendant's Motion to Dismiss the Amended Complaint ("Opposition") [Dkt. No. 19]. On February 8, 2013, BAE

---

[2] In his Amended Complaint, Metz alleges several facts which are completely opposite to those he alleged in his initial complaint.  Mot. at 17-18.

filed a Reply in Support of Its Motion to Dismiss Plaintiffs' Amended Complaint ("Reply") [Dkt. No. 20].

## II.   STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face" and to "nudge[ ] [his or her] claims across the line from conceivable to plausible." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563.

Under the Twombly standard, a "court deciding a motion to dismiss must not make any judgment about the probability of the plaintiffs' success . . . [,] must assume all the allegations in the complaint are true (even if doubtful in fact) . . . [, and] must give the plaintiff the benefit of all reasonable inferences derived from the facts alleged." Aktieselskabet AF 21, 525 F.3d at 17 (internal quotation marks and citations omitted). A complaint will not suffice, however, if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557) (alteration in Iqbal).

### III. ANALYSIS

Metz has withdrawn Counts I and V of his Amended Complaint. Opposition 2 n.1. Thus, the remaining claims are Counts II-IV, all of which BAE argues must be dismissed. The Court addresses each Count in turn.

#### A.   Count II: Tortious Interference with Contract

In Count II, Metz alleges that BAE tortiously interfered with his employment agreement with ALION and intentionally procured the termination of that agreement through improper means. Am. Compl. ¶ 79. Metz acknowledges that his employment agreement was "at will," but claims that, "under the circumstances of this case," he "had a contract of employment with ALION." Id.

To state a claim for intentional interference with contract under D.C. law, a plaintiff must allege: "(1) the existence of a contract; (2) knowledge of the contract; (3) intentional procurement of a breach of the contract; and (4) damages resulting from the breach." Onyeoziri v. Spivok, 44 A.3d 279, 286 (D.C. 2012).

The District of Columbia Court of Appeals has made it clear that an at-will employment agreement cannot be used as the basis of a tortious interference with contract claim. McManus v. MCI Commc'ns Corp., 748 A.2d 949, 957 (D.C. 2000) ("It is clear

that, as an at-will employee, appellant did not have a contractual employment relationship she could use as the basis for a suit for tortious interference with a contractual relationship.") (citing Bible Way Church v. Beards, 680 A.2d 419, 432-33 (D.C. 1996)); see also Riggs v. Home Builders Inst., 203 F. Supp. 2d 1, 22-23 (D.D.C. 2002) (noting that plaintiff could not bring an intentional interference with contract claim based on an at-will employment agreement under D.C. law) (citations omitted). The logic behind the court's conclusion was that "if there is no fixed or assured employment there is nothing tangible with which to interfere." Dale v. Thomason, 962 F. Supp. 181, 184 (D.D.C. 1997) (discussing Bible Way, 680 A.2d at 432-33).

Even though Metz acknowledges that his employment agreement with ALION was at-will, he states that "under the circumstances of this case, Plaintiff had a contract of employment with ALION." Am. Compl. ¶ 79. However, Metz does not identify any "circumstances" related to his agreement with ALION that would indicate that this was "fixed or assured employment" or otherwise more "tangible" than a standard at-will employment agreement. Dale, 962 F. Supp. at 184.

Instead, Metz attempts to distinguish Bible Way and McManus by arguing that the alleged "interferers" in those cases were

-6-

not true third parties, but were fellow employees of the same employer. Opposition 8-10. That is a distinction without a difference. The defendant's status is irrelevant to the question of whether an at-will employment agreement can constitute a contract for purposes of a tortious interference with contract claim. See Riggs, 203 F. Supp. 2d at 23 (rejecting attempt to distinguish McManus and Bible Way and noting that "the courts in both cases . . . specifically focused on the plaintiffs' at-will status in rejecting the tortious interference claims") (citing McManus, 748 A.2d at 957-58; Bible Way, 680 A.2d at 432-33). Metz's attempt to distinguish controlling precedent based on the status of the alleged third party interferer is unpersuasive.

Therefore, Metz has failed to allege the existence of a contract upon which his tortious interference with contract claim can be based, and Count II shall accordingly be **dismissed**.[3]

## B.   Count III: Tortious Interference with Prospective Economic Advantage

In Count III, Metz alleges that BAE tortiously interfered with his "valid business or economic expectancy with ALION," and intentionally induced or caused the termination of that expectancy through improper means. Am. Compl. ¶ 83. Again, the

---

[3] BAE also argues, persuasively, that Metz has failed to allege any facts demonstrating that BAE had any knowledge of some non-at-will contract between Metz and ALION.

basis for Metz's claim is his at-will employment agreement with ALION.

To state a claim for intentional interference with prospective economic advantage under D.C. law, a plaintiff must allege: "(1) the existence of a valid business relationship or expectancy between plaintiff and [ALION]; (2) knowledge of the relationship or expectancy on the part of the defendant; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage." Sabre Int'l Sec. v. Torres Advanced Enter. Solutions, Inc., 857 F. Supp. 2d 97, 103 (D.D.C. 2012) (citing Bennett Enters., Inc. v. Domino's Pizza, Inc., 45 F.3d 493, 499 (D.C. Cir. 1995)).

In McManus, 748 A.2d at 1957, the District of Columbia Court of Appeals directly addressed the issue of whether it would recognize a claim for intentional interference with prospective economic advantage based on an at-will employment agreement. The court ruled that it "never has held that an employee can maintain a suit for interference with prospective advantage where her expectancy was based on an at-will relationship." Significantly, the court said that "we do not do so now," and that it was "not willing" to provide the employee "contractual protections based on her alleged expectancy." Id.

-8-

Based on this language in McManus, several other members of this District Court have already concluded that the District of Columbia Court of Appeals would not recognize a tortious interference with prospective economic advantage claim based on an at-will employment agreement. See Zelaya v. UNICCO Serv. Co., 587 F. Supp. 2d 277, 287 (D.D.C. 2008); Houlahan v. World Wide Ass'n of Specialty Programs & Sch., No. 04-01161, 2006 WL 785326, at *4 (D.D.C. March 28, 2006); Daisley v. Riggs Bank, N.A., 372 F. Supp. 2d 61, 72-73 (D.D.C. 2005); Gross v. Davis, No. 01-1486, 2003 U.S. Dist. LEXIS 3427, at *9-*10 (D.D.C. Mar. 3, 2003); Riggs, 203 F. Supp. 2d at 24-25.

In response, Plaintiff has presented a long and detailed argument -- which is purely speculative -- that the District of Columbia Court of Appeals would permit a third party interference claim brought by an at-will employee. Plaintiff cites extensive case law from other jurisdictions throughout the country, including the Maryland courts, the Supreme Court, and the Restatement (Second) of Torts in support of its position. While this authority may be properly cited and is interesting to be aware of, it certainly does not support Plaintiff's prediction that the District of Columbia Court of Appeals would recognize a cause of action for third party interference even though that interference was based on at-will employment. The

court's language makes it clear that not only was it not making that ruling in McManus, but even emphasized that it "was . . . not willing to do [so] (emphasis added).   Id.   Given that emphatic language, this Court can certainly not reach the conclusion that the District of Columbia Court of Appeals would permit Plaintiff's third party interference claim based upon an at-will contract to proceed in this case.

Plaintiff seems to be arguing that the wide acceptance in the majority of jurisdictions, including the Supreme Court, of third party interference claims based on at-will employment virtually compels the District of Columbia Court of Appeals to reach the conclusion it seeks when the appropriate issue presents itself.   That, of course, is not the case.   The District of Columbia Court of Appeals, as the highest State court in the District of Columbia, is fully entitled to make its own decision interpreting the substantive law in the District of Columbia.   It was given this opportunity in McManus, and forcefully rejected it.[4]

---

[4] Plaintiff is correct that the Supreme Court did state -- in Haddle v. Garrison, 525 U.S. 121, 126-27 (1998) -- that "the sort of harm alleged by petitioner here -- essentially third party interference with at-will relationships -- states a claim for relief under § 1985(2).   Such harm has long been a compensable injury under tort law, and we see no reason to ignore this tradition in this case."   However, the Court was

In sum, this Court agrees with the cases already cited that the District of Columbia Court of Appeals' language in <u>McManus</u> leads to  the conclusion that it would not recognize a tortious interference with prospective economic advantage claim based on Metz's at-will employment agreement with ALION, and, thus, Count III shall be **dismissed.**[5]

### C. Count IV: Breach of the Implied Covenant of Good Faith and Fair Dealing

Count IV alleges that BAE violated the implied covenant of good faith and fair dealing when it "did not conduct itself with honesty in its . . . enforcement of the non-compete agreement with Plaintiff." Am. Compl. ¶ 89.

The District of Columbia Court of Appeals has held that all contracts contain an implied duty of good faith and fair dealing, which means that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." <u>Allworth v. Howard Univ.</u>, 890 A.2d 194, 201 (D.C. 2006) (quoting <u>Hais v. Smith</u>, 547 A.2d 986, 987 (D.C. 1988)). "If the party to a

---

interpreting federal tort law, not ruling on the substance of state law.

[5] BAE again argues, persuasively, that Metz has failed to allege any facts demonstrating that BAE had any knowledge of the alleged business relationship or expectancy between Metz and ALION.

contract evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party, he or she may be liable for breach of the implied covenant of good faith and fair dealing." Id. (citing Hais, 547 A.2d at 987-88).

In order to survive a motion to dismiss for breach of the implied covenant of good faith and fair dealing, plaintiff must allege facts to show that defendant "has taken steps, or refused to take steps, which ultimately had the effect of destroying or injuring the right to receive the fruits of the contract." Mero v. City Segway Tours of Wash. D.C., L.L.C., 826 F. Supp. 2d 100, 106-07 (D.D.C. 2011) (quotation omitted).

The only contract that Metz has identified between the parties which can form the basis for Metz's claim is the Waiver and Settlement Agreement that he executed upon his termination from BAE. See Robinson v. Deutsche Bank Nat. Trust Co., No. 12-0732, 2013 WL 1191034, at *13 (D.D.C. Mar. 25, 2013) (noting that under D.C. law, a "claim for breach of the implied covenant of good faith and fair dealing cannot exist in the absence of a contractual relationship") (quoting Busby v. Capital One, N.A., 772 F. Supp. 2d 268, 284 (D.D.C. 2011)). Metz must therefore allege that BAE "has taken steps, or refused to take steps, which ultimately had the effect of destroying or injuring the

-12-

right to receive the fruits" he contracted to receive under the Waiver and Settlement Agreement. Mero, 826 F. Supp. 2d at 106-07.

Metz has made no such allegations. BAE correctly asserts that the only "fruit" of the Waiver and Settlement Agreement to which Metz is entitled is "Supplemental Severance Pay and Benefits." Am. Compl. Ex. 1 ¶ 3(b).[6] Metz does not allege how BAE has, in any way, "taken steps, or refused to take steps, which ultimately had the effect of destroying or injuring" his right to receive those benefits.

Instead, Metz argues that BAE is interfering with his obligation to not seek employment with BAE's competitors. Metz insists that his agreement to not seek employment with BAE's competitors created an "implicit" right to the inverse - the ability to seek employment with any non-competitor of BAE. Opposition 26.

This argument is not persuasive. "[I]mplied covenants are disfavored," Amfac Resorts, L.L.C. v. Dep't of the Interior, 142 F. Supp. 2d 54, 73 (D.D.C. 2001), and the contract between Metz and BAE contains no right to seek future employment with non-

---

[6] The Court can consider documents attached as exhibits to the Complaint when resolving a motion to dismiss. See Daniels v. United States, No. 12-0485, 2013 WL 2352106, at *5 (D.D.C. May 30, 2013).

competitors of BAE.  It is clear that the non-compete provision was something provided by Metz to BAE in exchange for supplemental pay and benefits.  Thus, it is not a "fruit" of the contract that entitles him to any particular benefit.

Because the ability to work for ALION or any other employer is not a benefit provided to Metz under the agreement, BAE's alleged interference with that benefit cannot give rise to a claim for breach of the implied covenant of good faith and fair dealing. See Ihebereme v. Capital One, N.A., No. 10-1106, 2013 WL 1248240, at *10 (D.D.C. Mar. 28, 2013) (noting that "[p]laintiffs were not entitled to interest payments under the contract, so defendants could not have done anything to destroy or injure the plaintiffs' right to receive them") (citing Paul v. Howard Univ., 754 A.2d 297, 310 (D.C. 2000)); B&H Nat'l Place, Inc. v. Beresford, 850 F. Supp. 2d 251, 260-61 (D.D.C. 2012) (dismissing claim for breach of implied covenant of good faith and fair dealing where defendants "simply had no duty under the Covenants to disclose their business plans").

Therefore, Metz has failed to set forth a basic element of a claim for breach of the implied covenant of good faith and fair dealing, and, thus, Count IV shall be **dismissed**.

## IV.   CONCLUSION

Upon consideration of the Motion, Opposition, Reply, and the entire record herein, and for the reasons set forth in this Memorandum Opinion, Defendant's Motion to Dismiss is **granted**. An Order shall accompany this Memorandum Opinion.

September 30, 2013

Gladys Kessler
United States District Judge

**Copies to**: attorneys on record via ECF

-15-